[Cite as *State v. Lawson*, 2012-Ohio-1050.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97018**

---

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# MILTON LAWSON

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART, REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-545442

**BEFORE:** Rocco, J., Blackmon, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** March 15, 2012

-i-

**ATTORNEYS FOR APPELLANT**

Mark Gallagher
Towards Employment, Inc.
1255 Euclid Avenue, Suite 300
Cleveland, Ohio 44115

Brenna Lisowski
13940 Cedar Road #342
University Heights, OH 44118

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Marc D. Bullard
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant Milton Lawson appeals from his convictions and the sentences imposed after the trial court found him guilty of three counts of menacing by stalking, one count of telecommunications harassment, one count of aggravated menacing, one count of domestic violence, one count of having a weapon while under disability ("HWUD"), and one count of carrying a concealed weapon ("CCW").

{¶2} Lawson presents four assignments of error. He argues the court improperly denied his pretrial request for different assigned counsel, his conviction for domestic violence is not supported by either sufficient evidence or the manifest weight of the evidence, and some of his convictions constitute allied offenses that should have been merged at sentencing.

{¶3} This court cannot find error in the trial court's denial of Lawson's request for new counsel to be assigned. Moreover, Lawson's conviction for domestic violence is supported by both sufficient evidence and by the manifest weight of the evidence. However, because the state concedes Lawson's argument with respect to merger as to the weapons counts, Lawson's convictions and sentences are affirmed in part and reversed in part, and this case is remanded for proceedings consistent with this opinion.

{¶4} The victim, R.O., provided the following testimony.

{¶5} R.O. met Lawson sometime in 2004 and they eventually progressed to having an intimate relationship. In 2005, R.O. bore Lawson's daughter. Subsequently, the two of them "broke up," but approximately six months later, in 2007, they agreed to renew their relationship.

{¶6} Lawson had no sooner met R.O. for this purpose when he accused her of infidelity. They became embroiled in a physical altercation, and Lawson took up a steak knife and stabbed R.O. in the chest. Based on this incident, Lawson was convicted of attempted murder; he received a three-year sentence.

{¶7} In 2010, Lawson was released from prison.[1] Believing his declaration that he had "changed" while incarcerated, R.O. agreed to let him develop a relationship with their daughter. By summertime, Lawson and R.O. were "dating." By autumn, Lawson "started becoming jealous, * * * violent," and controlling of R.O. R.O. knew Lawson carried a gun; he had shown it to her.

{¶8} On November 15, 2010, R.O. had a telephone conversation with Lawson. Thereafter, R.O. made a call to the police; she indicated that Lawson "was threatening me, stating that he would be * * * over my house, and that he had a gun." A little more than a week later, on November 27, 2010, R.O. again called the police to report that

---

[1]The record reflects Lawson was placed on postrelease control; therefore, he continued to be supervised by the Ohio Adult Probation Authority ("APA").

Lawson was in her apartment and was refusing to leave; on that occasion, R.O. and Lawson resolved the situation without assistance.

{¶9} On December 9, 2010, R.O. called the police to state Lawson had been sending her "threatening" text messages on her phone. Lawson continued this activity. In addition, he began to appear "at [her] apartment [building], at the door, at the window."

{¶10} On December 16, 2010, R.O. went to the police station about her concerns because a particular incident had occurred that morning. R.O. reported that she had seen Lawson seated in a car in the parking lot of her building, that he made eye contact with her, then followed her out of the lot. Although he attempted to "block [her] off," she thwarted his move by turning toward the police station. The police advised her to call them if she saw Lawson again at her residence.

{¶11} Near midnight on December 18, 2010, R.O. received numerous text messages from Lawson. Lawson asked to see their daughter on Christmas. R.O. replied that she did not believe it was "a good idea." Lawson also asked R.O. for money; she told him she did not have any.

{¶12} Beginning at approximately 2:30 a.m. on December 19, 2010, Lawson sent R.O. a series of text messages. Although R.O. was in her living room watching television, Lawson's messages indicated that he thought R.O. was "out" having a good time; Lawson's texts to R.O. stated as follows:

"Ok ill b @ ur hse whn u gt thr since u wnt 2 go out n I wont b outside. Laugh @ tht!";

"N if my dghtr aint n her rm whn I gt thr I suggest u dnt cme hme!";

"U cn thnk ths is a game if u want 2 I dnt gv a f— no mo!";

"Ths is wht gt u hurt the 1st time I guess sme ppl dnt learn until its 2 late.";

"Read tht n my last txt n c how great wht I say happens!";

"I dnt gv a f— anymo tht n—a hs lft the buildn ill c u thr n if u dnt cme I knw whr 2 hit u whr it hurts mrs [']I dnt hv any money 2 gv['] but uve bn out evry sat[.]   im gon enjoy ths[.]";

"Ths is who u want so now u hv him[.]";

"Im here!";

"Whr u @?";

"So u nt here lk [']i ws lyin['] n my dghtr nt here[.]";

"U thnk lvn tht dumb ass christmas tree n tv on gon help u[.] im givin u 10 min 2 gt here!";

"Im n ur hse u tl me wassup?"

Each of Lawson's text messages bore the signature, in capital letters, "I DESERVE BTR!"

{¶13} Reading this series of messages, R.O. understood Lawson could partially see into her ground-floor apartment, so she looked outside and saw Lawson at one of her apartment's windows. She called the police; they arrested Lawson.

{¶14} Lawson subsequently was indicted on nine counts, charged with four counts of menacing by stalking, one count of telecommunications harassment, one count of aggravated menacing, one count of domestic violence, one count of HWUD, and one count of CCW. The first four counts also each contained a furthermore clause and a firearm and a forfeiture specification; the domestic violence count also carried a furthermore clause.

{¶15} The record reflects Lawson's defense counsel filed requests for discovery immediately after being assigned to the case. Although trial originally was scheduled for March 2011, the trial court referred Lawson for a psychological assessment, thus, postponing the proceeding.

{¶16} On May 5, 2011, the trial court conducted a hearing on the results of the psychological assessment. Defense counsel stipulated to the findings of Lawson's competency and sanity, but informed the trial court that Lawson expressed some discontent with counsel's representation. The trial court addressed Lawson regarding that issue and indicated its unwillingness to replace the attorney assigned to Lawson's case.

{¶17} Lawson's case was eventually scheduled for trial in June 2011. Lawson executed jury waivers as to all the counts; therefore, trial proceeded to the bench. At the conclusion of the state's case-in-chief, the state dismissed Count 1. Lawson presented the testimony of his friend and testified on his own behalf.

{¶18} The trial court ultimately found Lawson guilty on all counts. At sentencing, upon defense counsel's motion, the trial court merged all the firearm specifications and merged counts 2 through 4.

{¶19} The court imposed a total prison term of ten years, with consecutive sentences as follows: one year on the firearm specification to be served prior to and consecutive with 18 months on the "menacing by stalking count," six months on each of Counts 5 and 6, both of which merged "with the base felony counts," 18 months on Count 7, 5 years on Count 8, and one year on Count 9.

{¶20} Lawson appeals from his convictions and sentences with four assignments of error.

**"I.   The trial court abused its discretion when it denied the Appellant's request for assignment of new counsel.**

**"II.   The evidence was insufficient to sustain a finding of guilt on the charge of Domestic Violence.**

**"III.   The guilty verdict on the charge of Domestic Violence was against the manifest weight of the evidence.**

**"IV.    The court erred in not merging the charge of Domestic Violence with the charges of Menacing by Stalking, and the Carrying Concealed Weapons charge with the charge of Having Weapons While Under Disability."**

{¶21} In his first assignment of error, Lawson argues that the lower court acted improperly when it failed to grant his request made before trial for a change of his assigned counsel.   His argument is unpersuasive in light of the record.

{¶22} When a defendant asks the trial court for a new attorney during the course of the proceeding, the court is required to adequately investigate the defendant's complaint. *State v. Jones*, 2d Dist. No. 20349, 2005-Ohio-1208, at ¶ 12, citing *State v. Deal*, 17 Ohio St.2d 17, 18-19, 244 N.E.2d 742 (1969).   In deciding whether to grant the request, the court is required to balance the accused's right to counsel of his choice against the public's interest in the prompt and efficient administration of justice.   *State v. Murphy*, 91 Ohio St.3d 516, 523, 747 N.E.2d 765 (2001), citing *United States v. Jennings*, 83 F.3d 145 (6th Cir.1996).

{¶23} The trial court's decision is reviewed under an abuse-of-discretion standard. *Murphy*, citing *State v. Cowans*, 87 Ohio St.3d 68, 717 N.E.2d 298 (1999).   Only in the most extreme circumstances should appointed counsel be substituted.   *State v. Glasure*, 132 Ohio App.3d 227, 239, 724 N.E.2d 1165 (7th Dist. 1999).

{¶24} A review of the record in this case shows no abuse of discretion.   When Lawson's assigned counsel brought the matter to the court's attention, the court engaged

in an extensive colloquy with Lawson. Lawson indicated he and defense counsel were not "seeing eye-to-eye" with respect to trial strategy. Lawson acknowledged, however, that defense counsel listened to his ideas, provided advice, and was knowledgeable about his case; defense counsel merely recommended that Lawson entertain the state's offer of a plea bargain.

{¶25} After Lawson understood that his defense attorney would accede to his wishes to take the case to trial, he did not pursue the matter further. *State v. Adkins*, 8th Dist. No. 95279, 2011-Ohio-5149, ¶ 23. In fact, during his allocution at sentencing, Lawson stated that he "would like to thank [defense counsel]" because he "went to bat for" Lawson.

{¶26} Under these circumstances, Lawson's first assignment of error is overruled.

{¶27} In his second assignment of error, Lawson argues that his conviction for domestic violence is unsupported by sufficient evidence and is against the manifest weight of the evidence. He asserts the state failed to prove an essential element of the offense. He additionally claims he provided more credible evidence than the state. This court disagrees.

{¶28} When reviewing the sufficiency of the evidence to support a criminal conviction, the appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574

N.E.2d 492 (1991), paragraph two of the syllabus. The relevant inquiry is whether, *after viewing the evidence in a light most favorable to the prosecution*, any rational trier of fact could have found all of the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The *Thompkins* court noted:

> In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. *Id*. at 386-387.

{¶29} To warrant reversal of a verdict under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Thompkins*. The weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶30} Lawson was charged with violation of R.C. 2919.25(C), i.e., that "on or about December 16, 2010," he "did, by threat of force, knowingly cause [R.O.], a family or household member, to believe that [he] would cause imminent physical harm" to her.

Lawson contends in his second assignment of error that the state failed to present evidence that he made a "threat of force" against R.O. on December 16, 2010 that induced her to believe he would cause her imminent physical harm.[2]

{¶31} R.O. testified, however, that in the summer of 2010, Lawson showed her that he had a gun. R.O. also stated that after their relationship deteriorated, he telephoned her and threatened her by stating that he would come to her home "and that he had a gun." She testified she was "fearful to leave [her] apartment" based on his threats. She described a call from Lawson that she received on December 9, 2010 during which he told her he "would do [her] harm."

{¶32} R.O. testified that Lawson was waiting in a car in the parking lot when she emerged from her apartment building on the morning of December 16, 2010. She stated he lowered the driver's window so that she could readily see him, made eye contact with her, then followed her car as she drove out of the lot. She testified that she stopped for the traffic light and that Lawson drove his car alongside her in an attempt to block her; this constituted a show of force. R.O. testified that his action made her so fearful that she "pulled off" and proceeded directly to the police station.

---

[2]Despite the fact that R.O. several times denied Lawson had ever lived with her, Lawson presents no argument that the state failed to prove R.O. was a "family or household member." This is perhaps because, at the conclusion of the state's case-in-chief, Lawson did not raise this argument in his motion for acquittal, then subsequently himself provided the missing evidence when he testified that he lived with R.O. in 2010 from the time he was released from prison until the beginning of the summer.

{¶33} Viewing R.O.'s testimony in a light most favorable to the prosecution, this court finds the state provided sufficient evidence to prove Lawson's actions caused R.O. to believe he posed an imminent threat of physical harm.

{¶34} Although Lawson presented evidence designed to demonstrate he was elsewhere on the morning of December 16, 2010, the trial court indicated his evidence simply was not credible. In addition, Lawson conceded on cross-examination that R.O. reasonably could have believed his actions toward her posed an imminent threat of physical harm.

{¶35} Lawson's second and third assignments of error, therefore, are overruled.

{¶36} In his fourth assignments of error, Lawson argues that the trial court improperly applied R.C. 2941.25 at sentencing. He contends the trial court should have merged his conviction on Count 7 with his convictions on Counts 2 through 4, and his conviction on Count 8 with his conviction on

Count 9.

{¶37} The state concedes Lawson's argument with respect to the weapons charges. A review of the record, however, demonstrates Lawson's argument with respect to his domestic violence conviction lacks merit.

{¶38} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 47-50, the supreme court stated the relevant analysis as follows:

Under R.C. 2941.25, the court must determine prior to sentencing whether the offenses were committed by the same conduct. Thus, the court need not perform any

hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger.

In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other.* * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." * * * .

If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged. (Emphasis in original.)

**{¶39}** As previously stated, Lawson was convicted in Count 7 of violating R.C. 2919.25(C), i.e., that "on or about December 16, 2010," he "did, by threat of force, knowingly cause [R.O.], * * * to believe that [he] would cause imminent physical harm" to her, and in Counts 2, 3, and 4 with knowingly engaging in a pattern of conduct that would cause R.O. to believe that he would cause physical harm to her. Clearly, it is possible to "commit one offense and commit the other with the same conduct," as set forth in *Johnson*.

**{¶40}** The next step in the analysis, therefore, is to determine whether the offenses of menacing by stalking and domestic violence were committed by a single act with a single state of mind. In addressing a similar situation as that presented in this case, this court recently stated:

Given the sheer number of times that [defendant] contacted the victim, both by telephone and in writing, it is highly likely that the charged offenses were not committed at precisely the same time, so by definition the offenses could not be allied. Indeed, the act of physically writing something would suggest that it was not done at the same time the telephone calls were

placed. * * * [W]e conclude that the offenses were not allied. *State v. Johnson*, 8th Dist. No. 96064, 2011-Ohio-4954, ¶ 12.

**{¶41}** A review of the record in this case demonstrates Lawson engaged in separate activities at separate times in order to accomplish his aims. Under these circumstances, the crime of domestic violence was not an allied offense to the crimes of menacing by stalking.

**{¶42}** Because the state concedes Lawson's argument that his convictions in Counts 8 and 9 were allied offenses, Lawson's fourth assignment of error is sustained in part and overruled in part.

**{¶43}** In addition, the record reflects the trial court imposed sentences of six months on each of Counts 5 and 6, both of which "merge[d] with the base felony counts." In *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 20, the Ohio Supreme Court stated:

> The General Assembly has made clear that <u>it is the state that chooses which of the allied offenses to pursue at sentencing, and it may choose any of the allied offenses</u>. * * * In conferring that right on the state, the legislature did not specify when the state must make that election. The Legislative Service summary states that "the prosecution *sooner or later* must elect as to which offense it wishes to pursue" (emphasis added), id., thereby implying that the state has latitude in determining when to decide which offense to pursue at sentencing. (Underscoring added.)

**{¶44}** The trial court in this case, however, did not provide the state with the opportunity to make its election with respect to Counts 2 through 6. With the foregoing

caveat, Lawson's convictions are affirmed, and this case is remanded for resentencing consistent with *Whitfield.*

{¶45} Affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

PATRICIA ANN BLACKMON, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR