[Cite as *State v. Stein*, 2018-Ohio-2345.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO.  10-17-13

    v.

SCOTT A. STEIN,                       O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Mercer County Common Pleas Court
Trial Court No. 16-CRM-144

**Judgment Affirmed**

**Date of Decision:   June 18, 2018**

APPEARANCES:

    *Allen Vender* **for Appellant**

    *Matthew K. Fox and Joshua A. Muhlenkamp* **for Appellee**

**SHAW, J.**

{¶1} Defendant-Appellant, Scott A. Stein, appeals the October 11, 2017 judgment of the Mercer County Court of Common Pleas journalizing his conviction by a jury on one count of aggravated possession of drugs, with a major drug offender specification; on three counts of having a weapon under disability; and on three counts of receiving stolen property. On appeal, Stein claims that he was denied effective assistance of trial counsel.

*Relevant Facts*

{¶2} On November 9, 2016, Chief of Police Glass of the Village of Botkins received a phone call from an officer at the Wapakoneta Police Department regarding a woman named Megan Donnelly, for whom there was an active warrant for theft, and requested his assistance in obtaining her. Chief Glass was informed that Donnelly was en route to a local motel, driving a white Ford Expedition with California license plates, and that she was suspected to be hauling a large amount of methamphetamine in the vehicle. Upon arriving at the motel, Chief Glass encountered Donnelly unloading the vehicle in question. He advised Donnelly that there was an outstanding warrant for her arrest and detained her on the warrant. He asked to whom the vehicle belonged. Donnelly indicated that Appellant Stein had leased the car through a rental agency. A subsequent search of the vehicle revealed

a rental contract, which confirmed that Stein had leased the vehicle from a location in Nevada.

{¶3} Chief Glass arranged for another officer to transport Donnelly to the Wapakoneta Police Department. He was subsequently alerted by the motel management upon cleaning the room of suspicious items in the nightstand. Chief Glass examined the items and, based upon his experience in law enforcement, he suspected them to be methamphetamine and related drug paraphernalia. He performed a field test, which yielded a positive result for methamphetamine and weighed the substance at 44 grams.

{¶4} Upon further investigation, it was discovered that Donnelly first became acquainted with Stein as her drug dealer in the Summer of 2016. At one point she had traded at least four firearms that she had stolen from Joseph Brown, an individual with whom she was living, for drugs from Stein. Donnelly eventually moved to a motel after Brown asked her to leave.

{¶5} Around early November of 2016, Stein bought Donnelly a plane ticket to travel with him to Nevada, where he obtained a large amount of methamphetamines contained in black bag with white lettering. Stein and Donnelly drove back to Ohio from Nevada in the Ford Expedition rental car with the drugs hidden in back quarter panels. Stein gave Donnelly a portion of the methamphetamine for her assistance. Upon arriving in Celina, Stein directed

Donnelly, who was driving at the time, to a residence where he had her drop him off around midnight on November 9, 2016. He advised Donnelly to change motel locations to evade law enforcement and gave her money and the use of the rental car to do so. Donnelly arrived at the motel in Botkins shortly thereafter.

{¶6} At the time, the Grand Lake Task Force already had an open investigation on Stein, and his residence was under surveillance via a pole camera. Investigators Justin Chisholm and Lance Crum were contacted on November 9, 2016 by Wapakoneta law enforcement informing them that Donnelly was in custody and had a large quantity of methamphetamine in her possession. Investigators Chisholm and Crum spoke to Donnelly, who relayed the events of the prior days' travel out of state. The investigators decided to apply for a search warrant for Stein's residence in Celina. Due to the fact that another criminal case was pending in Logan County implicating Stein, which involved felonious assault with a firearm and having a weapon under disability charges, the investigators decided to use the Auglaize County Special Response Team and asked for a no knock warrant.

{¶7} Law enforcement executed the search warrant around 12:30 a.m. on November 10, 2016. They located Stein and his girlfriend, Kristy Schulte, in the basement and two children in the upstairs bedrooms. Stein was taken into custody. Ms. Schulte confirmed that Stein had been away for a period of time and had returned around midnight the night before. Investigator Chisholm searched the

basement and discovered a vial of white powder, which tested positive for cocaine according to an initial field test, but no other controlled substances were found. Law enforcement had already ascertained from viewing the surveillance from the pole camera that Stein had been driving a Toyota Camry that day. Information was obtained that the Toyota Camry was located at Schulte's apartment across town. Schulte gave consent to search the apartment.

{¶8} There, law enforcement found a locked safe and a Beretta 12-gauge shotgun in the master bedroom. Law enforcement had also located the Toyota Camry. A K-9 unit alerted and indicated to the safe and the Toyota Camry. The vehicle was impounded and the safe was placed into evidence until a search warrant could be obtained. After the warrant was executed, a subsequent search revealed a Colt Lawman 357 revolver and an empty plastic container in the safe. In addition, a black bag with white lettering containing a large quantity of suspected methamphetamine, a Remington 1100 12-gauge shotgun, and a Mossberg 510 20-gauge shotgun were found in the trunk of the Toyota Camry. A field test of the substance tested positive for methamphetamine, and was later confirmed to be 1,487 grams of methamphetamine. The firearms were later identified by Joseph Brown as the ones stolen from his home when Donnelly was living with him.

*Procedural History*

{¶9} On November 17, 2016, the Mercer County Grand Jury returned a ten-count indictment against Stein alleging that he committed Count One: aggravated possession of drugs, to wit: methamphetamine, in violation of R.C. 2925.11(A), 2925.11(C)(1)(e), a felony of the first degree, with a major drug offender specification and a forfeiture of an automobile in a drug case specification attached; Count Two: possession of cocaine, in violation of R.C. 2925.11(A), 2925.11(C)(4)(a), a felony of the fifth degree; Counts Three, Four, Five, and Six: having a weapon under disability, in violation of R.C. 2923.13(A)(2), 2923.13(B), each a felony of the third degree, and each with a weapon forfeiture specification; Counts Seven, Eight, Nine, and Ten, receiving stolen property, in violation of R.C. 2913.51(A), 2913.51(C), each a felony of the fourth degree.

{¶10} Stein retained counsel who filed a notice of representation with the trial court and a demand for discovery on November 22, 2016. Stein appeared for arraignment and entered a plea of not guilty to the charges listed in the indictment. The case was scheduled for a jury trial to take place on March 1, 2017.

{¶11} On February 21, 2017, Stein's counsel filed a motion to withdraw from representation, which the trial court granted and vacated the scheduled trial dates. The trial court subsequently appointed second trial counsel to represent Stein at State expense. The trial was scheduled to take place on May 24, 2017.

{¶12} On May 24, 2017, Stein filed a waiver of his speedy trial time rights and was granted a continuance of the trial until September 6, 2017.

{¶13} On June 12, 2017, Stein's appointed counsel filed seven pre-trial motions, including multiple motions to suppress evidence and a motion to dismiss the charges based upon several constitutional grounds. Six of these motions were overruled by the trial court and one was withdrawn by appointed counsel prior to trial.

{¶14} On September 6, 2017, the prosecution entered a nolle prosequi on Count Two, fifth degree possession of cocaine, and the weapon forfeiture specifications on Counts Three, Four, Five, and Six.

{¶15} On September 6, 7, and 8, 2017, the case proceeded to a jury trial. Several witnesses testified, including Megan Donnelly, Joseph Brown, the owner of the stolen firearms, as well as law enforcement involved in the investigation and the forensic scientist who tested and confirmed the identity and the amount of the substance found in the Toyota Camry as 1,487 grams of methamphetamine. The jury found Stein guilty on one count of aggravated possession of methamphetamine, a first degree felony, along with the major drug offender and vehicle forfeiture specifications, three counts of third degree felony offenses of having weapons under disability, and three counts of fourth degree felony offenses of receiving stolen

property. The jury found Stein not guilty of one count of having a weapon under disability and of one count of receiving stolen property.

{¶16} On October 11, 2017, the trial court issued its sentencing entry imposing an aggregate term of fourteen years in prison, to run consecutive to Stein's six-year prison term imposed in a separate case arising out of Logan County, for a total of twenty years.

{¶17} Stein filed this appeal, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT PROVIDE A SUBSTITUTION OF APPOINTED COUNSEL AFTER STEIN DEMONSTRATED THAT A BREAKDOWN IN THE ATTORNEY-CLIENT RELATIONSHIP OCCURRED. SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION; *STATE v. COLEMAN*, 37 OHIO St.3d 286, 292, 525 N.E.2d 792 (1988); SEPTEMBER 5, 2017, TR. 13-14; VOLUME I, TR.12.**

**ASSIGNMENT OF ERROR NO. 2**

**SCOTT STEIN RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS ATTORNEY REPEATEDLY FAILED TO OBJECT TO INADMISSIBLE, AND PREJUDICIAL HEARSAY. SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION; *STRICKLAND v. WASHINGTON*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *STATE v. BRADLEY*, 42 OHIO St.3d 136, 538 N.E.2d 373 (1989); EVID.R. 802; VOLUME II, TR. 271, 393, 395-96.**

**ASSIGNMENT OF ERROR NO. 3**

**SCOTT STEIN RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS ATTORNEY FAILED TO PREVENT THE JURY FROM LEARNING ABOUT OTHER CRIMES FOR WHICH HE WAS CHARGED. SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION; *STRICKLAND v. WASHINGTON*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *STATE V. BRADLEY*, 42 OHIO St.3d 136, 538 N.E.2d 373 (1989); EVID.R. 403(A); *STATE v. CREECH*, 150 OHIO St.3d 540, 2016-OHIO-8440, 84 N.E.2d 981.**

**ASSIGNMENT OF ERROR NO. 4**

**SCOTT STEIN RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HIS ATTORNEY WITHDREW A MERITORIOUS MOTION REQUESTING THAT THE EVIDENCE FOUND IN THE TOYOTA CAMRY BE SUPPRESSED. FOURTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; *STRICKLAND v. WASHINGTON*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *STATE v. BRADLEY*, 42 OHIO ST.3D 136, 538 N.E.2d 373 (1989); EVID.R. 404(B); *MAPP V. OHIO*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *STATE v. HILL*, 75 OHIO St.3d 195, 203, 661 N.E.2d 1068 (1996).**

**ASSIGNMENT OR ERROR NO. 5**

**THE CUMULATIVE EFFECTS OF STEIN'S FIRST FOUR ASSIGNMENTS OF ERROR DENIED HIM A FAIR TRIAL. *STATE v. IRWIN*, 7TH DIST. COLUMBIANA NO. 07 CO 22, 2009-OHIO-5271, 922 N.E.2d 981; *STATE v. DEMARCO*, 31 OHIO St.3d 191, 509 N.E.2d 1256 (1987).**

*First Assignment of Error*

{¶18} In his first assignment of error, Stein argues that he was denied his right to counsel because the trial court did not grant his request for substitute counsel. Specifically, he contends there was a complete breakdown in communication between himself and appointed counsel and thus, substitute counsel was warranted.

{¶19} The decision whether to remove court-appointed counsel and allow substitution of new counsel is within the sound discretion of the trial court; its decision will not be reversed on appeal absent an abuse of discretion. *State v. Murphy*, 91 Ohio St.3d 516, 523 (2001). An "abuse of discretion" implies an arbitrary, unreasonable, or unconscionable attitude on the part of the court. *State v. Adams*, 62 Ohio St.2d 151 (1980).

{¶20} An indigent defendant does not have a right to choose a particular attorney; rather, such a defendant "has the right to professionally competent, effective representation." *State v. Evans*, 153 Ohio App.3d 226, 2003-Ohio-3475, ¶ 30 (7th Dist.), citing *State v. Murphy*, 91 Ohio St.3d 516, 523 (2001). "Competent representation does not include the right to develop and share a 'meaningful attorney-client relationship' with one's attorney." *State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, ¶ 12 (1st Dist.). In order for the court to discharge a court-appointed attorney, "the defendant must show a breakdown in the attorney-

client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Henness*, 79 Ohio St.3d 53, 65 (1997), quoting *State v. Coleman*, 37 Ohio St.3d 286 (1988), paragraph four of the syllabus. That said, the right to counsel must be balanced against the trial court's authority to control its docket, as well as its awareness that a "demand for counsel may be utilized as a way to delay the proceedings or trifle with the court." *United States v. Krzyske*, 836 F.2d 1013, 1017 (C.A.6 1988); *see, also, State v. Lawson*, 8th Dist. Cuyahoga No. 97018, 2012-Ohio-1050, ¶ 24.

*Analysis*

1.   *First Trial Counsel*

{¶21} The record reflects that Stein had initially retained counsel to represent him. Retained trial counsel filed a notice of representation on November 22, 2016. A jury trial was set to commence on March 1, 2017. At a February 21, 2017 pretrial, Stein appeared with his retained trial counsel, who entered a motion to withdraw from Stein's representation on the grounds that Stein had failed to fulfill his financial obligation to him and Stein's refusal to permit retained counsel to consent to a continuance on his behalf. Retained counsel explained that a continuance was strategically desirable due to the serious nature of the charges, which included the major drug offender specification attached to Count One, and retained counsel's concern that two defense witnesses were still unable to be located and interviewed.

{¶22} A transcript of the pre-trial proceeding reveals Stein was argumentative and questioned the veracity of retained counsel's statements regarding the inability to locate defense witnesses and their financial agreement. It is also apparent that Stein misunderstood the calculation of the days which counted toward his speedy trial rights. Stein was adamant that his speedy trial rights had been violated because he had spent 90 days incarcerated while awaiting trial. Days before this pre-trial, retained counsel filed a motion to dismiss on speedy trial grounds, at Stein's behest, which was denied by the trial court because the majority of the days were allocated to Stein's pending case in Logan County. Upon Stein's admission that he had no further payment for retained counsel, the trial court granted the motion to withdraw and had Stein complete an affidavit of indigency so that counsel at State expense could be appointed, despite Stein's continued attempts to interrupt and argue with the trial court during the hearing.

2. *Second Trial Counsel*

{¶23} On March 1, 2017, substitute counsel was appointed to represent Stein. The trial court scheduled a new trial date to commence on May 24, 2017. On that date, the jury had been summoned and the parties appeared for trial. Stein's appointed counsel requested several matters be discussed outside the presence of the jury, and informed the trial court that Stein wished to "fire" him as counsel. The trial court inquired of Stein as to his reasons for wanting a new attorney. Stein

expressed displeasure with his appointed counsel's purported lack of availability, failure to file motions that *Stein* thought were necessary, and Stein disapproved of the way both his first and second counsel handled his case by "not going forward with [his] wishes*."* (May 24, 2017 Hrg. at 9). Appointed counsel expressed ethical concerns with Stein wanting him to file motions that counsel believed to be "frivolous," and not based on "good faith." (Id. at 11).

**{¶24}** Nevertheless, in the interest of full disclosure, appointed counsel proceeded to set forth *what Stein believed* to be the meritorious basis of these motions, over repeated interruption by Stein, and stated his concerns with the validity of Stein's legal arguments. Appointed counsel noted that in the file of previous counsel was a drafted motion setting forth similar arguments reflecting *Stein's* position on his case, which was never filed by prior counsel presumably because he shared the same sentiment as appointed counsel regarding the lack of merit of the motion. At the conclusion of the hearing, appointed counsel agreed to file Stein's motions in order to avoid further delay of the proceedings, which Stein accepted and agreed to waive his speedy trial rights in order for his motions to be pursued. The trial court again re-scheduled the trial to commence on September 6, 2017.

**{¶25}** Appointed counsel subsequently filed seven motions on Stein's behalf, to which the prosecution responded, and a hearing was held on June 30,

2017. Three of the motions were submitted to the trial court for its ruling. Appointed counsel requested additional time for a reply to be filed on the remaining four motions so that Stein had ample opportunity to review the prosecution's responses.

{¶26} On July 14, 2017, the trial court overruled three of the seven motions filed by appointed counsel at Stein's behest. Specifically, Motion No. 5, which sought a transcript of all grand jury testimony based upon Stein's belief that unspecified witnesses gave false and misleading testimony, was overruled on the basis that he failed to provide a particularized need for the transcript. Motion No. 6, which sought suppression of the evidence obtained from the execution of the search warrant of his girlfriend Schutle's apartment, was overruled for lack of standing to raise the motion. The trial court also overruled Motion No. 7, which sought suppression of the evidence obtained by law enforcement from the pole camera surveillance, due to an opinion from this Court, which held that such method of surveillance did not impinge upon an individual's Fourth Amendment protection. *See State v. Duvernay*, 3d Dist. Allen No. 1-16-62, 2017-Ohio-4219.

{¶27} On August 7, 2017, appointed counsel filed a reply to the prosecution's response on the remaining motions. The parties appeared before the trial court on the outstanding motions on September 5, 2017, the day before trial. As appointed counsel outlined the basis for each motion, Stein interrupted and

argued with appointed counsel's recitation to the trial court. After appointed counsel was finished speaking, Stein asked for new counsel based upon his disapproval of how appointed counsel handled the motions he requested to be filed. Viewing Stein's complaints as a further attempt to frustrate and delay the proceedings, the trial court overruled Stein's request. The trial court proceeded to hear testimony from a State's witness pertaining to a motion based upon Stein's claim that he was falsely arrested. The trial court then overruled three of the four remaining motions, with the final outstanding motion being withdrawn by appointed counsel for lack of standing.

{¶28} At the outset, we note that "when a defendant expresses concerns or complaints regarding appointed counsel, the trial court has a duty to inquire into the nature of the complaint, make such inquiry a part of the record, and make a decision on the record." *State v. Bowman*, 10th Dist. Franklin No. 06AP-149, 2006-Ohio-6146, ¶ 35. Here, the trial court addressed Stein's concerns on the record on each occasion that he raised them. The record demonstrates that the trial court engaged in a meaningful dialogue with Stein and appointed counsel, which resulted in a resolution so that the case could move forward in a timely fashion.

{¶29} Despite the accommodations made by the trial court, the prosecution, and appointed counsel, Stein continued to be argumentative with appointed counsel regarding trial strategy based upon Stein's own understanding of how to proceed

with his case up until the *third* scheduled trial date. "Defendant and trial counsel's failure to 'see eye to eye' regarding trial strategy is an insufficient basis for removal of appointed counsel." *State v. Hill*, 8th Dist. Cuyahoga No. 105554, 2018-Ohio-279, ¶ 11; *State v. Crew*, 8th Dist. Cuyahoga No. 86943, 2006-Ohio-4102, ¶ 17 ("Hostility, tension, or personal conflict between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify the withdrawal of appointed counsel.").

{¶30} In sum, the record fails to demonstrate any breakdown in communication or cooperation between Stein and his appointed counsel that would have violated Stein's constitutional right to effective assistance of counsel. Rather, the record indicates that the trial court considered Stein's request for substitute counsel at length, but found the request was neither timely nor supported by good cause. Therefore, we find that Stein was not prejudiced and the trial court did not abuse its discretion by denying Stein's request for new counsel. Accordingly, the first assignment of error is overruled.

*Second, Third and Fourth Assignments of Error*

{¶31} We will discuss these assignments of error together due to the fact that they each involve Stein's claim that he was deprived of his constitutional right to the effective assistance of trial counsel based upon alleged errors made by appointed

counsel. In addition, for ease of discussion, we elect to address these assignments of error out of order.

*Standard of Review*

{¶32} In order to prevail on a claim of ineffective assistance of counsel, Stein must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires Stein to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. If Stein can so demonstrate, he must then establish that he was prejudiced by the deficient performance. *Id*. To show prejudice, Stein must establish there is a reasonable probability that, but for his counsel's errors, the result of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id*. at 694.

{¶33} "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant

must overcome the presumption that, under the circumstances the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955); *see also*, *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31. "A verdict adverse to a criminal defendant is not of itself indicative that he received ineffective assistance of trial counsel." *State v. Wade*, 10th Dist. Franklin No. 16AP-674, 2018-Ohio-976, ¶ 55, citing *State v. Hester*, 45 Ohio St.2d 71, 75 (1976).

**{¶34}** "An appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic." *State v. Thompson*, 2d Dist. Montgomery No. C.A.: 27500, 2018-Ohio-1228, ¶ 14, citing *State v. Brown*, 38 Ohio St.3d 305, 319 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *See Strickland*, 466 U.S. 668. A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy. *State v. Smith*, 17 Ohio St.3d 98 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524 (1992).

*1.      Withdrawal of the Motion to Suppress*

**{¶35}** In his fourth assignment of error, Stein contends that appointed

counsel was ineffective for withdrawing Stein's motion to suppress the evidence

found in the Toyota Camry, which was located at Stein's girlfriend's apartment and

was not titled in his name.  At a pre-trial hearing, the following was discussed

regarding the merits of this motion.

> **Appointed Counsel:  Defendant's motion number three has to do with the search and recovery of property based on the search warrant for a Toyota motor vehicle and a safe.  In reviewing this matter again, in order to go forward with on this motion, we would—the Defense would have to state that we have standing, standing including some sort of ownership interest, or ownership over these two pieces of personal property.  And the fruits of that search should be stated for the record essentially constitute the, pretty much the corpus delicti of the case of possession of methamphetamine, possession of cocaine [sic], and possession of firearms under disability.  So it's my professional opinion and my judgment, based upon my experience of almost 30 years in the law, that the Defendant—I would be withdrawing that motion on behalf of the Defendant and ask that the Court consider that motion withdrawn.**
>
> **Stein:  I'd like to—**
>
> **Appointed Counsel:  Motion number two—**
>
> **Trial Court:  And then that's based on the claim standing, he would be incriminating himself, is that the theory?**
>
> **Appointed Counsel: Correct, Your Honor.  I believe that would be, first of all, against his interests and also violating my—I would be violating my client's Fifth Amendment right.**
>
> **Stein:  That's not true.**

(Sept. 5, 2017, Hrg. at 8-9).

**{¶36}** After appointed counsel finished his statements attempting to outline *both Stein's* contentions and *counsel's* perspective on the pending motions, the trial court permitted Stein to speak.

> **Stein: \* \* \*as far as I'm saying they searched my car, and you know he's saying it's not my car. They're saying it's my car. I'm not denying that, and the drugs were found and whatever. \*\*\***

(*Id*. at 12).

**{¶37}** On appeal, Stein asserts that there is a reasonable probability that had appointed counsel moved forward with the motion, the contents of the Toyota Camry would have been suppressed. However, Stein's positon is premised on pure speculation and a lack of foundation in the record that the motion would have been granted. Moreover, it is evident that appointed counsel made a strategic trial decision not to permit Stein to formally admit to ownership of the vehicle. As alluded to at the pre-trial hearing excerpted above, appointed counsel recognized that this case hinged upon the prosecution proving that Stein had possession of the 1,487 grams of methamphetamine and two stolen firearms found in the vehicle. Simply put, Stein fails to point to any portion of the record that would indicate that appointed counsel's decision not to concede ownership of the Toyota Camry and to withdraw the suppression motion was anything other than sound trial strategy. Accordingly, we overrule the fourth assignment of error.

2. *Failure to Object to Testimony*

**{¶38}** In his second assignment of error, Stein argues that appointed counsel was ineffective for failing to object to testimony, which he argues was hearsay. Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

      *A.      Officer John Barker's Testimony*

**{¶39}** On appeal, Stein argues that appointed counsel was ineffective for failing to object to statements made by Officer John Barker of the Grand Lake Task Force, in which he stated that several unknown sources had informed him that "Mr. Stein was bringing methamphetamine into the area and selling it locally." (Sept. 6, 2017 Tr. at 393). For its part, the prosecution argues that the statements were made during Officer Barker's testimony regarding the Task Force's on-going investigation of Stein and the pole camera surveillance, and therefore was offered to explain police conduct and not offered for the truth of the matter asserted. The statements highlighted by Stein on appeal appeared in the following context at trial.

> **Prosecutor: Okay. Were you involved in an investigation regarding a Scott Stein?**
>
> **Officer Barker: Yes, I was.**
>
> **Prosecutor: We're here today to talk about some incidents that start on November 9th and November 10th of 2016, correct?**

**Officer Barker:  Correct.**

**Prosecutor:  All right.  But you were familiar with Mr. Stein before that?**

**Officer Barker: Yes.**

**Prosecutor:  And I want to talk about that.  Let's talk about as it relates to how you assisted that day, okay?**

**Officer Barker:  Okay.**

**Prosecutor:  All right.  So in general, how were you familiar with him?**

**Officer Barker:  We had received information that Mr. Stein was bringing methamphetamine into the area and selling it locally. Several sources of information was [sic] provided to us.  Some people knew Mr. Stein by name, some referred to him as a truck driver with an unknown name, that would bring methamphetamine into the area.**

**Prosecutor:  And is it routine for you to get tips like that when you're working Task Force?**

**Officer Barker: Yes, it is.**

**Prosecutor:  What do you guys do with those?**

**Officer Barker:  We begin investigations.  Sometimes it's very difficult, because we'll go and sit in a certain area and watch a place for hours upon hours upon hours, and nothing ever happens.  Sometimes we get lucky and see a possible drug transaction take place right in front of us while watching, and sometimes most of them turn into long-term investigations.**

**Prosecutor:  Okay. And was this one of those?**

**Officer Barker: Yes.**

> **Prosecutor: All right. And so this was a long-term investigation. You guys were taking this seriously?**
>
> **Officer Barker: Yes.**
>
> **Prosecutor: And what, if anything, specifically did you do that becomes relevant in our investigation?**
>
> **Officer Barker: We began doing video surveillance of the residence at 719 South Elm Street.**
>
> **Prosecutor: You determined where he lives?**
>
> **Officer Barker: Yes.**
>
> **Prosecutor: And tell me how you did this video surveillance?**
>
> **Officer Barker: We used a camera, placed it on a pole, not on the residence, but on public property, and gave us a view of the front of the residence, so we could—there was no alley to this residence. All it had was a front, street-facing residence. And we were able to see traffic come and go from that residence.**

(Sept. 6, 2017 Tr. at 392-95).

**{¶40}** As a general rule, a statement offered to explain a police officer's reasons for conduct while investigating a crime does not constitute hearsay. *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, ¶ 24, citing *State v. Thomas*, 61 Ohio St.2d 223, 232 (1980); *see also State v. Phillips*, 3d Dist. Allen No. 1-15-43, 2016-Ohio-3105, ¶ 13. However, "[t]he conduct to be explained should be relevant, equivocal and contemporaneous with the statements[, and] such statements must meet the standard of Evid.R. 403(A)." *State v. Blevins*, 36 Ohio App .3d 147, 149 (10th Dist. 1987).

-23-

*Analysis*

**{¶41}** We disagree with the prosecution that all of these statements were necessary to explain how the Task Force came to place this location under surveillance with a pole camera. On the contrary, rather than focused on the property location, these statements clearly insinuate that Stein had a reputation on the streets as a known trafficker of methamphetamine in the area, and accordingly implicate Stein as having prior propensities for the most serious offense tried before the jury. Even if the statements were not offered for their truth, the content had potential for misunderstanding by the jury and should have been excluded under Evid.R. 403(A).

**{¶42}** More importantly to the assignment of error, we fail to see how it could have been sound trial strategy for appointed counsel not to object to these statements and request a limiting instruction to the jury. However, given the additional legitimate evidence in the record essentially establishing the same allegations, it is unreasonable to believe that a juror would rely solely on two hearsay statements, made over the course of three days of testimony, in reaching the jury's verdict. Therefore, even though it may have been error for appointed counsel not to object to these statements, we cannot find that but for appointed counsel's failure to object on this basis, there is a reasonable probability that the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 694.

### B. Megan Donnelly's Out-of-Court Statements

{¶43} Stein also argues that appointed counsel was ineffective for failing to object to law enforcement witnesses who testified to Megan Donnelly's statements, and to Donnelly's testimony regarding her prior consistent statements to law enforcement at trial. Specifically, Stein argues that the testimony constituted inadmissible hearsay and was unfairly prejudicial to his case because he contends that the statements were only introduced to bolster Donnelly's credibility.

### C. Donnelly's Testimony at Trial

{¶44} Donnelly herself testified at trial regarding her relationship with Stein. Specifically, she identified Stein in the courtroom and stated that she became acquainted with him during the Summer of 2016 because he was her "drug dealer." (Sept. 6-8 2017 Tr. at 203). She explained that after her husband "kicked [her] out," she began living with Joseph Brown. (Id. at 207). Brown initially gave her money which she used to buy drugs from Stein. Eventually Brown stopped giving her money and she then turned to stealing items from his home, which included firearms, and traded them for drugs from Stein. At trial, she identified the firearms that she stole from Brown and gave to Stein in exchange for drugs.[1]

{¶45} Donnelly recalled discussions with Stein regarding a trip to Nevada for the purpose of purchasing a large amount of methamphetamine. Stein

---

[1] Donnelly identified the firearms that she took from Brown's home and traded to Stein for drugs in photos at trial

subsequently bought her a plane ticket. Donnelly explained that she owed Stein, specifically she stated that, "[H]e had fronted me a large amount of meth that I could not pay for, so I knew that if I went that would be—we would be even." (Sept. 6-8 2017 Tr. at 216). According to Donnelly, once in Las Vegas, Stein rented a car and they drove to Laughlin, a city on the Arizona-Nevada border. There, they met a man named Herb. Stein told Donnelly "he was going for a walk" and left her with Herb. (Id. at 219). Donnelly then waited for Stein at a casino hotel room because Herb became "aggressive and very inappropriate." (Id.).

{¶46} Thirteen hours later, Stein returned with a large amount of methamphetamine. She recalled seeing the four, gallon-sized Ziploc bags containing meth in a black "bookcase" with white lettering.[2] (Sept. 6-8 2017 Tr. at 224). Stein indicated that he had driven to Los Angeles with a girl named "Jessica." (Id. at 221). Stein and Donnelly then went to Jessica's house where Stein attempted to trade some of the drugs for a car so he did not have to rent one. However, Stein could not get the title transferred in a timely manner, so he rented a different vehicle, a white Ford Expedition, to drive back to Ohio. Donnelly and Stein hid the drugs still contained in the Ziploc bags and black bookcase in the back quarter panels of the new rental car. Donnelly recalled that they only drove back to Ohio during the day and stayed in hotel rooms at night. She remembered Stein receiving several

---

[2] Donnelly identified the bookcase and the drugs contained in it in photos at trial.

phone calls during their return to Ohio from people anxious for Stein to return. One of which was from a woman "who said she was being questioned from the Grand Lake Task Force, and she would tell him what he needed to know for $5,000." (Id. at 216).

{¶47} Once they arrived to Ft. Wayne, Indiana, they stopped to buy digital scales and then continued on to Mercer County, Ohio, and they again stopped to divide the methamphetamine into smaller amounts. She remembered Stein putting some of the meth into a coffee cup with a bag inside for her "as payment" for traveling with him. (Sept. 6-8 2017 Tr. at 227). They also switched positions in the vehicle with Donnelly driving into Mercer County. She testified that Stein directed her to pull over somewhere near his home, grabbed the black bookcase containing the drugs, and exited the vehicle around midnight on November 9, 2016.

{¶48} Before they left Donnelly was staying in a motel room in Wapakoneta. While they were driving back to Ohio, Stein suggested that she change motels because she had an outstanding warrant issued by the Wapakoneta Police Department. She drove back to the Wapakoneta motel to gather her things. Meanwhile, Stein had left her money for another motel room with an attendant at a nearby gas station. Donnelly eventually drove to the Budget Inn in Botkins, in neighboring Shelby County, where she was arrested by the Chief of Police there. Donnelly recalled being questioned by law enforcement. She explained that she

knew it was in her interest to "tell the truth" because "the jig was up" and relayed the details of the prior days' events to law enforcement.  (Sept. 6-8 2017 Tr. at 237). Donnelly further stated that she had pending charges against her in Mercer and Shelby Counties stemming from her involvement with Stein.

**{¶49}** Following her testimony, law enforcement officers were permitted to testify to the statements that Donnelly had made to them after she had been arrested regarding the trip she took with Stein to Nevada—specifically, that there they had obtained a large amount of methamphetamine and brought it back to Ohio.

*Analysis*

**{¶50}** In reviewing the instances cited in the record by Stein in the context in which they appear, it can reasonably be concluded that the testimony from law enforcement regarding Donnelly's statements were offered to explain further investigative steps, rather than introduced for the truth of the matter asserted.  *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, ¶ 24.  Moreover, each instance of law enforcement testimony cited by Stein occurred after Donnelly testified from firsthand knowledge of the same matters at trial and the jury had already heard her version of the events.

**{¶51}** We further note that on cross-examination appointed counsel questioned Donnelly extensively about her lengthy criminal history, which included several offenses bearing on her character for truthfulness, presumably to diminish

the appearance of her credibility in front of the jury. It is axiomatic, that the weight given to the evidence and the determination of the credibility of the witnesses are within the province of the jury. *See* S*tate v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

**{¶52}** Even if the testimony regarding Donnelly's prior statements were inadmissible "[c]ompetent counsel may reasonably hesitate to object to potential errors in the jury's presence because objections may be considered bothersome by the jury and may tend to interrupt the flow of a trial." *State v. Howell*, 5th Dist. Delaware No. 15 CAA 12 0098, 2016-Ohio-7749, ¶ 39. Thus, appointed counsel's failure to object may have been sound trial strategy. In any event, the admission of Donnelly's prior statements to law enforcement was harmless beyond a reasonable doubt in view of other evidence establishing Stein's guilt. *See State v. Clinton*, -- Ohio St.3d--, 2017-Ohio-9423, ¶129, citing *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 33. Accordingly, for all these reasons set forth above, the second assignment of error is overruled.

3. *Failure to Stipulate to Pending Charges*

**{¶53}** In his third assignment of error, Stein argues that appointed counsel was ineffective for failing to stipulate to evidence of a pending indictment in Logan County in order to substantiate the having a weapon under disability charges, and

instead permitting the prosecution to admit as an exhibit Stein's indictment from

Logan County, which the jury was permitted to review.

**{¶54}** A copy of the indictment was introduced during the testimony of a

Logan County Sheriff's Deputy and established the following charges against Stein:

**COUNT 1.**
Scott A. Stein, on or about the 28th day of April, 2016, at the county of Logan aforesaid, knowingly caused or attempted to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordinance, in violation of Ohio Revised Code §2903.11(A)(2), **Felonious Assault**, a felony of the second degree.

**COUNT II.**
Scott A. Stein, on or about the 28th day of April, 2016, at the county of Logan aforesaid, knowingly, without privilege to do so, discharged a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual, in violation of Ohio Revised Code §2923.161(A)(1), **Improperly discharging a firearm at or into a habitation, in school safety zone, or with intent to cause harm or panic to persons in a school building or at a school function,** a felony of the second degree.

**COUNT III.**
Scott A. Stein, on or about the 28th day of April, 2016, at the county of Logan aforesaid, knowingly that an official proceeding or investigation is in progress, or is about to be or likely to be instituted shall [sic] alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence is such proceeding or investigation, in violation of Ohio Revised Code § 2921.12(A)(1), **Tampering with Evidence**, a felony of the third degree.

**SPECIFICATIONS TO COUNTS I-III:**
The Grand Jurors further find and specify that Scott A. Stein had a firearm on or about the offender's person or under the offender's control while committing the offense. The Court shall impose a mandatory three-year prison term.

-30-

(State's Ex. 14) (emphasis in original).

**{¶55}** On appeal, Stein maintains that appointed counsel's decision not to seek a stipulation or request the charges to be severed at trial, but rather allowing the jury to see the details of the pending indictment in Logan County unfairly prejudiced him by permitting the jury to review improper character evidence in violation of Evid.R. 404(B).[3] *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) (stating that "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged").

**{¶56}** The prosecution, for its part, argues that appointed counsel had a strategic reason for choosing not to stipulate to the indictment based upon an apparent irregularity in the service of the warrant accompanying the indictment. The prosecution points to appointed counsel's cross-examination of the Logan County Sheriff's Deputy on this issue in support of its argument that counsel's failure to object to the introduction and admission of the indictment was simply trial tactic.

---

[3] Evid.R. 404(B) states "Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

*Analysis*

**{¶57}** At the outset, we do not concur with Stein that a full stipulation as to the content of the indictment or a motion to sever were the only avenues available to appointed counsel to avoid the admission of this propensity evidence. Moreover, once again, we fail to see a legitimate trial strategy in appointed counsel choosing not to raise *any* objection to the introduction and admission of the entire language and allegations of the Logan County indictment. Certainly there were other strategies that could have been employed that would have preserved the defense's challenge to the service of the indictment without permitting the jury to see the details of the allegations listed in the Logan County indictment, which on their face plainly demonstrate a substantial danger of unfair prejudice. However, given the overwhelming evidence establishing Stein's guilt, we cannot find that Stein satisfied his burden in demonstrating that but for appointed counsel's actions with respect to the Logan County indictment, there is a reasonable probability that the result of the proceedings would have been different. Accordingly, we conclude that Stein has failed to establish that his trial counsel was ineffective on this basis and we overrule the third assignment of error.

Case No. 10-17-13

*Fifth Assignment of Error*

**{¶58}** Finally, Stein argues that the cumulative effect of appointed counsel's errors in this case resulted in him being denied a fair trial. However, as provided above, Stein did not demonstrate that appointed counsel made errors so serious to rise to the level of deficient performance and to substantiate a conclusion that appointed counsel was not functioning as the counsel guaranteed by the Sixth Amendment. In particular, Stein failed demonstrate that in light of the amount of evidence supporting his convictions that he was prejudiced by counsel's errors. " '[T]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.' " *State v. Hill*, 75 Ohio St.3d 195, 212 (1996), quoting *United States v. Hasting*, 461 U.S. 499, 508-09 (1983). Therefore, Stein's argument regarding cumulative error lacks merit and his fifth assignment of error is overruled.

**{¶59}** Based on the foregoing, the assignments of error are overruled and the judgment entry of conviction and sentence is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**

-33-