[Cite as *State v. Shurelds*, 2021-Ohio-1560.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO. 1-20-35

    v.

MARQUAVIUS D. SHURELDS,            O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2019 0044

Judgment Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Decision: May 3, 2021

APPEARANCES:

    *William T. Cramer*  for Appellant

    *Jana E. Emerick*  for Appellee

Case No. 1-20-35

**SHAW, J.**

{¶1} Defendant-appellant, Marquavius Shurelds ("Shurelds"), brings this appeal from the August 10, 2020 judgment of the Allen County Common Pleas Court sentencing him to an aggregate thirty-nine years in prison after Shurelds entered no contest pleas to, and was convicted of, two counts of kidnapping in violation of R.C. 2905.01(A)(2), both felonies of the first degree, and one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree. All three convictions contained three-year firearm specifications pursuant to R.C. 2941.145. On appeal, he argues that law enforcement improperly coerced the statement of a witness, that the trial court erred by denying Shurelds' requests for a continuance made near the trial date, that his no contest pleas were not entered knowingly, intelligently, and voluntarily, that the trial court erred by denying his presentence motion to withdraw his no contest pleas, that the trial court failed to make the appropriate statutory findings to impose consecutive sentences at the sentencing hearing, and that the trial court erred by imposing consecutive sentences on all three firearm specifications.

*Background*

{¶2} On December 2, 2018, around 8:15 pm, D.W. was driving her vehicle with her infant son inside to visit her son's father, A.W., in order to pick up some

clothes for Christmas.[1] When D.W. arrived at the designated address, she parked next to a white SUV, which A.W. had included in his description. D.W. assumed A.W. was in the white SUV since an interior light was on and a person was inside; however, when she got out of her vehicle and opened the door to the SUV she found Shurelds, aka "Bra Bra."

{¶3} Shurelds told D.W. that the father of her child was inside the nearby apartment and that D.W. should follow Shurelds inside as well. D.W. declined, and returned to her vehicle. After a few minutes, D.W. became impatient and got back into the SUV and started moving bags of clothing to her vehicle. While she was moving the clothes, Shurelds "attacked from behind" and dragged her into the apartment, leaving D.W.'s son in her car.

{¶4} Inside the apartment, D.W. saw the father of her child on the floor motionless, bleeding "profusely" from what she would later learn was a stab wound. Shurelds threw D.W. on a couch, covered her head with a blanket, and threatened to kill her. Shurelds had two guns in his possession. There were two other individuals present inside the apartment along with Shurelds: Kiarris Laws, who also possessed multiple firearms, and Lamont Jones, the tenant of the apartment.

---

[1] The opening line in appellant's brief states that the presentence investigation contains the only detailed recitation of facts in this case due to the fact that the case was resolved via no contest pleas; however, the majority of the facts contained herein are taken from a sworn affidavit of a police officer attached to the original complaint, or other motions and filings made throughout the pendency of this case.

{¶5} D.W. was concerned about her child, so Laws went outside to D.W.'s vehicle and brought the child in. The child was crying and the men demanded that D.W. get the child under control.

{¶6} D.W. stated that the men were acting together, demanding money and drugs. Following the demands, A.W. was forced to give a key to another residence to Lamont Jones. Jones left the apartment and returned with some money, but Shurelds was upset about the amount, and the lack of accompanying drugs.

{¶7} After some calls were made to learn where A.W. purportedly kept his drugs, the assailants learned that A.W. might have a stash of drugs at his sister's residence. D.W. made contact with A.W.'s sister and arranged to get the drugs. Shurelds then made D.W. and her son get into D.W.'s vehicle at gunpoint to drive to the residence of A.W.'s sister. D.W. secured her son in his seat, then Shurelds sat in the back of the vehicle with a gun held on D.W. During the drive, Shurelds told D.W. that he had shot someone in the face a few weeks prior, and that he would harm D.W. and/or her son if necessary. D.W. drove Shurelds to the designated residence and they picked up a closed package, which D.W. believed had drugs in it.

{¶8} Afterward, Shurelds brought D.W. and her son back to the original apartment and Shurelds spoke with the other two men about what should be done with D.W., A.W., and the child. Laws, Shurelds' accomplice, suggested killing the

victims but Lamont Jones argued against it. The assailants ultimately allowed D.W. to leave with her son and A.W., though she was told to take A.W. to a Van Wert hospital rather than a Lima hospital so local police would not learn where the incident occurred.

{¶9} On February 14, 2019, Shurelds was indicted for three counts of felonious assault in violation of R.C. 2903.11(A)(2), all felonies of the second degree (counts one through three, respectively), three counts of kidnapping in violation of R.C. 2905.01(A)(2), all felonies of the first degree (counts four through six, respectively), and one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree (count seven). All seven counts of the indictment contained three-year firearm specifications pursuant to R.C. 2941.145(A). Shurelds initially entered pleas of not guilty to the charges.

{¶10} Due to indigency, Shurelds had an attorney appointed to represent him and the case was assigned for trial on April 16, 2019. On March 19, 2019, the State filed a motion to consolidate this case with another Allen County Common Pleas Court case against Shurelds wherein Shurelds allegedly shot a man in the face on September 5, 2018.[2] The cases were ultimately consolidated.

{¶11} On March 28, 2019, Shurelds retained counsel and waived his speedy trial rights. The trial date was also vacated to an uncertain date in the future so the

---

[2] This is the same incident that Shurelds purportedly used to threaten D.W. with while driving to pick up the "package."

newly retained defense counsel could prepare and file any necessary pretrial motions.

{¶12} On April 9, 2019, Shurelds filed a "Motion to Suppress and/or Exclude," seeking to prevent the state from introducing the testimony or recorded interview of the alleged victim A.W. Shurelds argued that the recorded interview showed that the detective used unreasonable, coercive tactics in an attempt to get A.W. to make statements that were contrary to A.W.'s original medical reports from the hospital, wherein A.W. stated that a woman had stabbed him in the leg. (Doc No. 87). On May 9, 2019, the State filed a response arguing, *inter alia*, that the detective's tactics were not unreasonable and even if they were A.W. did not provide any statement whatsoever in the interview regarding the incident in question.

{¶13} A hearing was held on the suppression motion on May 16, 2019. The parties orally argued the matter and submitted the recorded interview of A.W. to the trial court for review. On May 29, 2019, the trial court filed an entry overruling the suppression motion.

{¶14} After the suppression motion was denied, Shurelds' jury trial was assigned for November 19, 2019; however, on October 29, 2019, Shurelds filed a motion to continue the trial date so the defense could seek, *inter alia*, a medical expert. The State was not opposed to the continuance, so the trial was continued until March 3, 2020.

{¶15} On January 9, 2020, Shurelds' retained counsel filed a motion to withdraw, citing a significant deficit on outstanding bills in the amount of "several thousand dollars." Defense counsel indicated that he would continue to represent Shurelds in the case if the deficit was satisfied. A hearing was held on the matter and retained counsel was permitted to withdraw when the deficit was not cured.

{¶16} Shurelds was again determined to be indigent and a state public defender was appointed to represent him. After new counsel was appointed for Shurelds, the March 2020 trial date was vacated and trial was rescheduled for June 23, 2020, to give Shurelds' state public defender time to prepare.

{¶17} On June 4, 2020, less than three weeks before the trial was scheduled to begin, Shurelds filed a motion to continue the trial arguing, *inter alia*, that COVID-19 restrictions had prevented investigators from speaking with some potential defense witnesses. On June 10, 2020, the trial court held a hearing on the motion for a continuance. At the hearing, the State objected to a continuance, arguing, *inter alia*, that it was bringing a key witness from Utah who would be unavailable for up to eighteen months if the trial was not held on the scheduled date.

{¶18} The trial court ultimately denied Shurelds' request for a continuance, stating that the case had been pending for well over a year, that Shurelds had multiple defense attorneys who had worked diligently, that the case had been continued multiple times, and that Shurelds had never provided any list of witnesses.

However, pursuant to agreement of the parties, the instant case was severed from the other case against Shurelds that had been previously joined for purposes of trial.

{¶19} On June 19, 2020, on a Friday afternoon the week before the scheduled trial, a newly retained attorney filed a notice of appearance on Shurelds' behalf, and the new attorney requested a continuance of the June 23, 2020, trial date. The trial court held a hearing on June 22, 2020, the day before the trial was scheduled to begin via electronic means. At the hearing, the counsel that Shurelds attempted to retain stated that he had not yet spoken to Shurelds at all and that he would withdraw from the case if a continuance was not granted because he would need at least a month or two to be ready for trial. Shurelds' public defender stated that he would be ready for trial, but he noted that there was a difference of opinion on how the case should be tried between himself and Shurelds. The state again objected to a continuance for reasons previously expressed; however, the state also introduced jail-house phone calls into evidence wherein Shurelds could be heard telling an individual that he needed to get a new attorney to get his trial date pushed back. Following the hearing, the trial court filed a written entry denying Shurelds' request for a continuance and denying his request to substitute his counsel.

{¶20} On June 23, 2020, a pool of jurors was present for the beginning of Shurelds' trial. However, the parties negotiated a plea agreement wherein Shurelds agreed to plead no contest to felonious assault in counts one and two of the

indictment, along with the attached firearm specifications, kidnapping in counts four and five, along with the firearm specifications, and aggravated robbery in count seven, with the firearm specification. In exchange, the state agreed to dismiss counts three and six and the accompanying specifications. The agreement was reduced to writing and signed.

{¶21} The trial court held a Crim.R. 11 hearing wherein the agreement was recited to the court. The trial court then determined that Shurelds was entering his no contest pleas knowingly, intelligently, and voluntarily. His pleas were accepted and he was found guilty. Sentencing was set for a later date.

{¶22} On July 8, 2020, Shurelds filed a motion to withdraw his no contest pleas, arguing that he was under duress when he entered his pleas because he was not comfortable going to trial with his current counsel as evidenced by having retained another attorney and through his desire to preserve his appellate rights via the no contest plea. Shurelds also filed a handwritten motion to withdraw his pleas claiming that his attorney promised him that if he entered his pleas he could get under fifteen years in prison.

{¶23} The trial court held a hearing on the motion to withdraw to determine if there was a reasonable and legitimate basis for withdrawal. Shurelds provided brief testimony as to why he felt he was under duress at the time of the plea hearing. After analyzing all the requisite factors, the trial court determined that there was no

reasonable and legitimate basis for a plea withdrawal and Shurelds' motion was denied.

{¶24} On August 10, 2020, the matter proceeded to sentencing. The trial court found that count one—felonious assault—and count four—kidnapping—related to the same victim merged for purposes of sentencing, and that count two—felonious assault—and count five—kidnapping—related to the same victim merged for purposes of sentencing. The state elected to proceed to sentencing on counts four and five, the kidnapping charges (along with the unmerged aggravated robbery in count seven). Shurelds was ordered to serve eleven years in prison on count four, eleven years in prison on count five, and eight years in prison on count seven. He was also ordered to serve three-year prison terms on all three of the firearm specifications. All of the sentences were ordered to be served consecutively in this matter. A judgment entry memorializing Shurelds' sentence was filed the same date the sentencing hearing was held. It is from this judgment that Shurelds appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Appellant's federal and state due process rights to a fair trial were violated by law enforcement's abusive and coercive interview of a witness.**

**Assignment of Error No. 2**
**Appellant's federal and state due process rights to present a defense with counsel were violated by the trial court's denial of a motion to continue trial.**

**Assignment of Error No. 3**
**Appellant's federal and state due process rights to the assistance of counsel of choice were violated when the trial [court] refused to grant a continuance to allow retained counsel to prepare for trial.**

**Assignment of Error No. 4**
**Appellant's no contest pleas were not entered voluntarily.**

**Assignment of Error No. 5**
**The trial court erred by denying appellant's pre-sentence motion to withdraw his no-contest pleas.**

**Assignment of Error No. 6**
**The trial court failed to make the statutory findings required to impose consecutive sentences.**

**Assignment of Error No. 7**
**The trial court erred by imposing a mandatory consecutive sentence on a third firearm specification.**

*First Assignment of Error*

{¶25} In his first assignment of error, Shurelds argues that the trial court erred by denying his motion to suppress/request to exclude the testimony of A.W. He contends that law enforcement used improperly coercive tactics in A.W.'s interview in this matter, and that these coercive tactics "destroyed" A.W.'s credibility as a potential witness for *either* party, violating Shurelds' right to a fair trial.

Standard of Review

{¶26} A suppression motion is a device used to eliminate evidence from a criminal trial that has been secured illegally in violation of the Fourth, Fifth, or Sixth

-11-

Amendment. *State v. French*, 72 Ohio St.3d 446, 449, 1995-Ohio-32. Although Shurelds' original motion was styled, in part, as a suppression motion, the state argued that his motion to preclude the testimony of A.W. was actually a motion *in limine*. The purpose of a motion *in limine* is to avoid the introduction of matters at trial that are irrelevant, inadmissible, and prejudicial. *Id.* A ruling on a motion *in limine* "reflects the court's anticipated treatment of an evidentiary issue at trial and, as such, is a tentative, interlocutory, precautionary ruling" subject to change given context in trial. *Id.* at 450.

{¶27} Generally, a trial court's ruling on a motion *in limine* does not preserve for review any error the trial court may have made on the motion; rather, any claimed error must be preserved at trial by an objection, proffer, or ruling on the record. *State v. Harris*, 12th Dist. Butler No. CA2007-11-280, 2008-Ohio-4504, ¶ 27. There are some instances where the denial of a motion *in limine* is the functional equivalent of a suppression motion, which would preserve it for appellate review. *See State v. Shalash*, 12th Dist. Warren No. CA2014-12-146, 2015-Ohio-3836, ¶ 38 (stating how a motion *in limine* can be the functional equivalent of a suppression motion in certain circumstances).

{¶28} We question whether this case presents one where the denial of the motion *in limine* was the functional equivalent of a suppression motion, especially given that the matter involved the prospective statement of a *witness* and not the

defendant, and where no statement incriminating to Shurelds was ever obtained during the encounter with the police. Nevertheless, if we were to treat the trial court's decision denying the motion *in limine* as a motion to suppress, *and* if we determined that denial of the motion *in limine* was preserved by the no contest plea we apply the same standard of review as we would for a suppression motion. *Shalash* at ¶ 42 citing *State v. Johnston*, 2d Dist. Montgomery No. 26016, 2015-Ohio-450, ¶ 27.

{¶29} Therefore, treating Shurelds' motion as a suppression motion purely in the interests of justice in view of the seriousness of the instant charges, "[a]ppellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.* citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). When reviewing a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8 citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is *de novo*, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.* citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997). Finally, to the extent that Shurelds argues

on appeal that the trial court erred and should have dismissed the case altogether due to coercive police tactics, we would also review that legal decision *de novo*. *See, e.g.*, *State v. Preztak*, 8th Dist. Cuyahoga No. 91244, 2009-Ohio-621, ¶ 10.

Argument and Analysis

{¶30} A.W., the father of D.W.'s child, was one of the alleged victims in this matter. When D.W. first saw A.W. on the evening in question, December 2, 2018, A.W. was on the floor of the apartment D.W. had been dragged into, bleeding "profusely" from a stab wound. When the incident ended and the victims[3] were allowed to leave, D.W. took A.W. to a hospital in Van Wert. A.W. allegedly told hospital personnel that he had been stabbed by a girl or another girlfriend.

{¶31} A.W. was not interviewed by police regarding the matter in question until December 28, 2018. At the time of his interview, A.W. had been arrested on unrelated matters. A.W.'s interview was conducted by Detective Steve Stechschulte. The interview was recorded and introduced into evidence at a hearing on the matter. In its entirety, the recording lasted approximately fifteen minutes.

{¶32} In Detective Stechschulte's initial interaction with A.W. on the video, it is evident that A.W. believes that the detective is present to talk to A.W. about A.W.'s recent arrest, particularly since A.W. is incarcerated because of the charges.

---

[3] One of Shurelds' attorneys presented the argument early in the proceedings of this case that he felt the evidence might show that A.W. was not actually a victim in this matter and that A.W. had been stabbed in self-defense while trying to enter the apartment of Lamont Jones. Regardless, no similar claims were made that D.W. or her son were not victims in this matter.

However, Detective Stechschulte states that he does not want to talk about any of the unrelated charges against A.W.; rather, he wants to talk to A.W. as a victim of the incident with Shurelds, aka "Bra Bra." Detective Stechschulte clarified that he did not care if A.W. did any jail time on the other charges. Detective Stechschulte stated that A.W. was one of the victims in the Shurelds matter and he admonished A.W. to tell the truth.

{¶33} A.W. stated that he did not know anything about being stabbed at the residence on the evening in question. He maintained this story even when Detective Stechschulte stated that they had A.W.'s blood/DNA to prove A.W. was at the apartment. Further, Detective Stechschulte stated that he had talked to "Lamont," another one of the men present during the incident. A.W. responded that he just wanted to get his prison/jail time out of the way for the current charges. He claimed that he did not know what D.W. had gotten herself into on the evening in question, and when he was confronted with what happened to D.W. that night he responded, "that's crazy."

{¶34} When A.W. repeatedly avoided questions about the incident, Detective Stechschulte claimed—or threatened, according to Shurelds—that A.W. could be charged with contempt, obstruction, or perjury. After he was told this, A.W. said he was going to get an expensive Columbus lawyer. Following some

arguing, Detective Stechschulte also told A.W. that he did not have a Fifth Amendment right in this matter because he was the victim.

{¶35} Detective Stechschulte told A.W. to think about his child, who was also part of the incident. Detective Stechschulte and A.W. argued, with A.W. again mentioning his current charges. At one point, A.W. told Detective Stechschulte to "shut the fuck up." In response to repeated questions about being stabbed and about the night in question, A.W. continued to respond that he was incarcerated and that he did not know anything about any other incident other than the incidents he was charged with. A.W. stated that the incident that he knew "nothing" about in this matter was going to get "taken care of" in a manner that was "correct."

{¶36} Detective Stechschulte also confronted A.W. with the fact that A.W. used a false name at the Van Wert hospital. Detective Stechschulte told A.W. he could be charged with federal identity theft. He also told A.W. that a judge would remember his lack of cooperation when A.W. was sentenced on his current charges. A.W. called Detective Stechschulte a "clown" and stated that he had already provided for his children by leaving them with houses. Detective Stechschulte threatened that he might take those houses as well. At one point Detective Stechschulte told A.W. that he would "fuck [A.W.] as hard as [he] want[s]."

{¶37} The interview ended, with the interaction between A.W. and Detective Stechschulte lasting approximately thirteen and a half minutes. After Detective

Stechschulte left the interview room, A.W. can be heard stating something to himself about how Detective Stechschulte had not tried to work out a deal with him. A.W. refers to Detective Stechschulte as a "clown" again.

{¶38} The trial court characterized A.W. as "obstreperous" in the interview, and stated that A.W. "acted like the whole situation was a joke." (Doc. No. 116).

{¶39} Shurelds filed a motion to suppress or exclude A.W.'s testimony, claiming that the interview was so coercive and so outrageous that it had impeded any potential evidence that A.W. could present at trial, particularly if it was favorable to the defense. In support, Shurelds noted that A.W.'s initial story regarding the stabbing to hospital workers was that a girl had stabbed him, not implicating Shurelds, thus A.W. could have been an important witness for the defense. In addition, Shurelds argued that the threats of numerous charges and threats of financial sanctions against A.W. "destroyed" any potential he had as a witness.

{¶40} Shurelds cited cases that he felt were similar to his situation wherein it was determined that a witness's testimony was coerced to such a degree that the credibility of that witness's testimony was destroyed. *See State v. Bradley*, 1st Dist. Hamilton No. C-940543, 1995 WL 356284; *State v. Asher*, 112 Ohio App.3d 646, 650 (1st Dist.1996). The trial court analyzed those cases and found them distinguishable, reasoning as follows.

> **[Detective] Stechschulte was no[t] overly coercive and in fact, did not compel [A.W.] to testify. From the very beginning, even at the hospital, [A.W.] said he knew nothing about what happened or how he got stabbed. While this Court does not condone Stechschulte's language, he did not seem to faze [A.W.]. [A.W.] offered no evidence to Stechschulte. There was not [sic] threat to [A.W.] that if he said anything different than what he said before, he would be arrested and charged with perjury like in *Bradley*. [A.W.] had not sworn out an affidavit before being interviewed.**
>
> **According to the incident report from Van Wert, [A.W.] told the Van Wert police that the incident happened in Van Wert, but refused to answer any other questions. Stechschulte did not coerce any testimony from [A.W.]. [A.W.] did not appear to be afraid of Stechschulte's threats of additional charges. In fact, [A.W.] seemed to brush the threats off with smiles and laughs, seeming to not take the situation serious.**
>
> **Based on what [A.W.] said and refused to say during his interviews with Van Wert police and with Stechschulte and his demeanor and attitude towards Stechschulte, the Court cannot anticipate what [A.W.] might or might not say if called as a witness in the trial in this case. During both interviews (with Van Wert and Stechschulte) [A.W.] said he knew nothing about what happened. He was glib and confident in his answers. [A.W.] did not ever appear to be intimidated by Stechschulte. The Court cannot find, based on the evidence presented that Stechschulte's interview method, while not exemplary, presented fundamental unfairness to defendant.**

(Doc. No. 116).[4]

{¶41} In our own review of the matter, we agree with the trial court. A review of the interview establishes that A.W. expected to be offered some type of

---

[4] We note that the trial court had access to the electronic discovery in this matter, and both parties encouraged the trial court to consider the discovery in making its decision on the motion. That discovery is not in the record before us.

deal related to his current charges, or at least to talk about his current charges, and when the focus of the interview was related to the Shurelds incident, A.W. claimed he did not know anything and did not want to talk about it. A.W. did not reveal any information related to the incident in question.

**{¶42}** As the trial court stated, Detective Stechschulte did make threats of other possible charges against A.W., but those threats did not result in A.W. providing a story, let alone changing his story or making any statements contrary to what he had made before. As the trial court noted, there is no way to tell what A.W.'s testimony regarding the incident in question may or may not be at trial, regardless of the propriety of Detective Stechschulte's tactics. The latter point going directly to our concern expressed earlier as to why a mere pre-trial *in limine* matter is generally preserved only after it is introduced at trial and not upon a no contest plea.

**{¶43}** More specifically, this distinction renders this case unlike the case of *State v. Bradley*, *supra*, wherein the First District Court of Appeals was presented with an alleged victim who had initially filed a complaint claiming that her husband harmed her. Before the case went to trial, the alleged victim signed an affidavit recanting her earlier version of events. When the case *proceeded to trial*, the *prosecutor* asked the trial court to advise the alleged victim of her rights. The *trial court* told the alleged victim that if she said anything different than what was in the

affidavit, she would be arrested "now and charged with perjury." *Bradley* at * 1. Afterward the alleged victim was told she had the right not to say anything to incriminate herself, but she was not advised of her right to counsel. The alleged victim went on to testify, essentially consistent with her initial complaint.

{¶44} In *Bradley*, the First District Court of Appeals determined that the *trial court and prosecutor* had coerced *actual testimony at trial* from the complaining witness because the remarks "went beyond permissible admonitions and rose to the level of intimidation." *Bradley* at * 1. The First District held that this violated the defendant's right to a fair trial. Similarly, in *State v. Asher*, *supra*, which Shurelds cites on appeal, the First District determined that coercing a witness's testimony by the prosecutor or by the trial court violated a defendant's right to a fair trial.

{¶45} Notably, in both *Bradley* and *Asher*, the purported coercion was not done by a detective, as is alleged in this case. Moreover, in both cases critical and damaging testimony—and the only testimony linking the defendant to any crime— was presented *through the coerced witness*. Here, A.W. was never "coerced" into making any statement at all, let alone a statement that was the sole basis *for a conviction at trial*. Thus this case is entirely unlike those cited by Shurelds and the cases Shurelds cites have no bearing on the current case.

{¶46} Furthermore, it is important to emphasize that due process guarantees a criminal defendant the right to establish a defense by presenting his own witnesses.

"Merely warning a defense witness of the consequences of perjury [or contempt or other crimes] does not, in and of itself, violate a defendant's due process rights." *State v. Harrison*, 1st Dist. Hamilton No. C-150642, 2016-Ohio-7579, ¶ 6, citing *United States v. Pierce*, 62 F.3d 818, 832 (6th Cir.1995). But a defendant's rights may be violated by unnecessarily strong admonitions against perjury that are aimed at discouraging a defense witness from testifying. *Id*.; *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351 (1972). To establish such a violation, the defendant must show that the admonition substantially interfered with the witness's free and voluntary choice to testify. *Pierce* at 833; *United States v. Foster*, 128 F.3d 949, 953 (6th Cir.1997).

**{¶47}** Shurelds has provided us with no indication that any admonitions or "threats" substantially interfered with A.W.'s statements, let alone a decision to testify. For all of these reasons, even under a *de novo* review, we cannot find that Shurelds was denied his right to due process, or that the trial court erred by denying his suppression motion/motion to exclude/motion to dismiss. Therefore, his first assignment of error is overruled.

*Second Assignment of Error*

**{¶48}** In his second assignment of error, Shurelds argues that the trial court erred by denying his June 4, 2020, motion to continue the trial. Again, we question the extent to which a continuance issue is preserved following a plea of no contest. However, for the reasons stated earlier, and because the continuance issue in the

third assignment of error indirectly involves the right to counsel, we elect to address the second and third assignments of error purely in the interests of justice.

## Standard of Review

**{¶49}** "An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981); *State v. Ames*, 3d Dist. Allen No. 1-19-02, 2019-Ohio-2632, ¶ 29. An abuse of discretion is a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

## Analysis

**{¶50}** The Supreme Court of Ohio has recognized that, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Unger* at 67, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). "Weighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Id.*

**{¶51}** The Supreme Court of Ohio identified a number of factors that a trial court should consider when evaluating a motion for a continuance, which include (1) the length of the delay requested; (2) whether other continuances have been

requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and (6) other relevant factors, depending on the unique facts of each case. *Id.* at 67-68.

{¶52} In this case, on June 4, 2020, Shurelds filed a motion to continue the June 23, 2020 trial date. The trial court held a hearing on the motion on June 10, 2020, and ultimately denied the motion after conducting the following analysis.

> **This case has been pending since February 14, 2019 when the indictment was returned. The trial was first scheduled for March 12, 2019 with court-appointed attorney Greg Donohue representing defendant. Later, defendant hired attorney Kenneth Rexford in March 2019 and the trial was continued to November 19, 2019. Defendant subsequently moved for another continuance of the trial and the trial was rescheduled for March 3, 2020. Attorney Rexford was granted leave to withdraw in January 2020 and the Court appointed Attorney Kirk McVay from the state public defender's office. Upon Mr. McVay's appearance the trial was continued again to the present date of June 23, 2020. Defendant wants to continue it once again due to the difficulties in preparation caused by COVID-19. The record shows the many motions and court hearings that have occurred in this case. All counsel representing defendant have worked diligently.**
>
> **What is missing from the file is a list of witnesses for defendant, other than responses that any witness named by the state could be a witness for the defense. Now the defendant apparently is having difficulty talking face to face with a couple potential witnesses: Betty Cotton, whose name appears in the state's discovery and someone nicknamed "Tone'" [sic] who might be Cotton's**

**boyfriend. According to the discovery, Cotton and her boyfriend were allegedly involved in giving a package to one of the victims in this case, [D.W.]. Defendant says it is important to his defense to talk face-to-face with these two potential witnesses because they would have information bearing on [D.W.]'s credibility. Interesting to wonder how defendant knows these two will have helpful information if defendant has never spoken to the witnesses.**

**After consideration of the reasons the defendant wants this case continued, the late hour of the fling [sic] of the motion, the arguments of counsel for and against the motion, the history of this case, including the previous continuances that can be charged to defendant, that three attorneys for defendant could have talked to these witnesses over the last year and a half, even before COVID-19, and because defendant has been in jail for nearly one and a half years, the court hereby ORDERS that defendant's motion for a continuance is DENIED.**

(Doc. No. 259).

**{¶53}** Shurelds now contends on appeal that the trial court did not give proper "deference" to the preparation concerns of his attorney when deciding his motion for a continuance. Further, he argues that not all the delays in this case were attributable to Shurelds, as it took time for this case to be joined with the other criminal case against Shurelds (the case that was later severed) and there was, Shurelds claims, "discovery intransigence" on behalf of the state resulting in defense attorneys filing motions to compel.

**{¶54}** However, a review of the trial court's decision illustrates a careful analysis of many factors in this case. In its analysis, the trial court summarized the history of the delays, including the delays that were caused by Shurelds and his

representation. The trial court analyzed the purported reasons for the newly requested continuance and noted the late "hour" of the filing for another continuance.

**{¶55}** In addition to what the trial court found, we would also point out that at the hearing on the motion for a continuance the trial court was also made aware by the state that one of the state's witnesses was being brought in from Utah for the June 23, 2020, trial date. Further, the trial court had already heard the case against Shurelds' co-defendant.[5] As the victim in this case had testified in the case of Shurelds' co-defendant, she wanted to get Shurelds' case completed as well. In addition to these factors, the trial court noted the difficulty in rescheduling the trial yet again, particularly in light of COVID restrictions. *See Unger* at 67.

**{¶56}** In sum, the trial court conducted a thorough analysis of the request for a continuance, addressing the *Unger* factors. Importantly, a trial court is not even explicitly required to outline the *Unger* factors when denying a continuance. *State v. Colley*, 4th Dist. Scioto No. 09CA3323, 2010-Ohio-4834, ¶ 20. Nevertheless, given all the factors involved and the trial court's careful consideration, we cannot find that the trial court abused its discretion by denying Shurelds' June 4, 2020, request for a continuance. Therefore his second assignment of error is overruled.

*Third Assignment of Error*

---

[5] Shurelds' co-defendant, Kiarris Laws, was convicted and sentenced to an aggregate 54-years in prison. He appealed to this Court and his appeal was denied. *State v. Laws*, 3d Dist. Allen No. 1-20-10, 2021-Ohio-166.

**{¶57}** In his third assignment of error, Shurelds argues that the trial court violated his right to have the counsel of his choice by denying the June 19, 2020 request for a continuance made by the counsel he attempted to retain that same date. He argues that the denial of this continuance effectively denied him the counsel of his choice.

Relevant Authority[6]

**{¶58}** "An indigent defendant does not have a right to choose a particular attorney; rather, such a defendant 'has the right to professionally competent, effective representation.' " *State v. Stein*, 3d Dist. Allen No. 10-17-13, 2018-Ohio-2345, ¶ 20, quoting *State v. Evans*, 153 Ohio App.3d 226, 2003-Ohio-3475, ¶ 30 (7th Dist.), citing *State v. Murphy*, 91 Ohio St.3d 516, 523 (noting that an indigent defendant must show "good cause" to warrant substitution of counsel). Whether counsel is court-appointed or privately-retained the Sixth Amendment's (as incorporated by the Fourteenth Amendment) guarantees that an individual is entitled to " '[c]ompetent representation[, but it] does not include the right to develop and share a "meaningful attorney-client relationship" with one's attorney.' " *Id.*, quoting *State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, ¶ 12 (1st Dist.); *see also Murphy* at 523, citing *Morris v. Slappy*, 461 U.S. 1, 13 (1983) (noting that no court could possibly guarantee that a defendant would develop the

---

[6] To the extent this assignment of error challenges the trial court's denial of the June 19, 2020, request for a continuance, the same standard of review from the previous assignment of error applies.

kind of rapport that would constitute a "meaningful attorney-client relationship" whether the attorney is privately-retained or provided by the public).

**{¶59}** "In order for the court to discharge a court-appointed attorney, 'the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel.' " *Id.*, quoting *State v. Henness*, 79 Ohio St.3d 53, 65 (1997), quoting *State v. Coleman*, 37 Ohio St.3d 286 (1988), paragraph four of the syllabus. While a person with sufficient financial resources can effectively choose a particular attorney privately-retaining them for their specific case and conceptually discharge them and seek to substitute new privately-retained counsel when there is the perception of or the actual absence of rapport, this right to counsel of one's choosing is not without limitation. "[T]he right to counsel must be balanced against the trial court's authority to control its docket, as well as its awareness that a 'demand for counsel may be utilized as a way to delay the proceedings or trifle with the court.' " *State v. Baskins*, 3d Dist. Allen No. 1-18-23, 2019-Ohio-2071, ¶ 10 quoting *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir.1988), and citing *State v. Lawson*, 8th Dist. Cuyahoga No. 97018, 2012-Ohio-1050, ¶ 24.

Analysis

**{¶60}** After the trial court denied Shurelds' request for a continuance at the June 10, 2020 hearing discussed in the second assignment of error, defense counsel

asked for a recess. When court reconvened after that recess, defense counsel stated that Shurelds had expressed his intention to retain counsel to represent him further in the matter.

{¶61} The trial court stated that was "fine" but for the time being the court-appointed counsel remained counsel "unless and until new counsel appears. I'll continue to appoint you on the earlier representation when [prior counsel] got off the case [because] Mr. Shurelds didn't have the money to hire an attorney. So, court-appointed counsel will remain on the case." (June 10, 2020, Tr. at 15). The trial court added that if Shurelds had money to retain counsel, that was fine but "[t]he trial is still set for June 23rd." (*Id*.) Defense counsel acknowledged the court's ruling and indicated that he would keep preparing for trial.

{¶62} On Friday afternoon June 19, 2020, a new attorney filed a notice of appearance and a request for a continuance of the June 23, 2020, trial date. Due to the late filing, and the pending trial date, the trial court held an electronic hearing on the matter via Zoom on June 22, 2020. All parties were in attendance including Shurelds, his appointed counsel, and the attorney that Shurelds was attempting to substitute for his appointed counsel.

{¶63} The trial court noted that since the last hearing subpoenas had been filed, so it had to be determined whether the newly retained counsel would be permitted to substitute for appointed counsel and whether a continuance would be

granted to allow substitute counsel time to prepare. The proposed substitute counsel stated that he had actually not spoken to Shurelds about the case at all yet and that he would need at least a month or two to prepare for trial. However, he stated he could not be prepared for trial on June 23, 2020, so if a continuance was not granted he would withdraw because it would not make any sense to go forward representing Shurelds.

{¶64} The state expressed indifference to Shurelds' request for substitution of counsel but the state adamantly objected to a continuance due to a witness having already been driven in from Utah for trial. In addition, the state argued that Shurelds was simply trying to delay his trial. In support of this accusation, the state presented two jailhouse calls from Shurelds. In one, made June 17, 2020, Shurelds stated that he needed to get money to get to a lawyer so he did not have to go to trial on Tuesday. On the second call, Shurelds specifically stated that he wanted to get his "shit pushed back," referring to the trial.

{¶65} Shurelds then made a statement at the June 22, 2020 hearing that he felt the trial court had said at the June 10, 2020, hearing that if Shurelds retained counsel the trial would get continued. He stated that he did not feel comfortable going to trial with his current attorney. The trial court responded by stating that at the prior hearing the trial court stated it was fine if Shurelds hired another attorney but the trial was scheduled for June 23, 2020.

{¶66} Shurelds then reiterated that he did not feel comfortable with his current attorney because his current attorney had not subpoenaed the witnesses Shurelds wanted and the appointed attorney had not spoken with Shurelds since the prior hearing. Shurelds' appointed attorney stated that he was prepared to go to trial, but he noted that there were "extreme differences" of opinion between Shurelds and his counsel about how the case should be tried.

{¶67} The trial court took the matter under advisement then issued a seven-page entry denying Shurelds' request for substitution of counsel and his request for a continuance. In its entry, the trial court specifically analyzed all of the *Unger* factors, noting such things as the late filing of the motion, that there was no indication of a complete communication breakdown between Shurelds and his appointed attorney, that the proposed new attorney had never spoken to Shurelds, that a witness had been brought from Utah and housed at public expense for the trial, that Shurelds' co-defendant had been tried and convicted by a jury in 2019, and that there was a level of inconvenience to the court and it's crowded docket, particularly in light of COVID-19. In addition, the trial court noted the recorded jail-house phone calls from Shurelds wherein he wanted to get his case continued. Factoring in all these things, the trial court stated it carefully considered the request for substitution of counsel and the request for a continuance, but they were ultimately denied.

{¶68} Shurelds contends on appeal that the trial court's decision improperly denied him the counsel of his choice. He claims that he had no motive to actually delay the trial so the trial court's finding that his request was essentially not in good-faith was erroneous. Further, he renews his arguments related to a continuance from the prior assignment of error, claiming that many of the prior delays in this case were largely out of his control.

{¶69} Contrary to Shurelds' arguments, the trial court issued a thorough and lengthy entry denying his request for substitution of counsel and his request for a continuance. The trial court analyzed all of the *Unger* factors mentioned in the prior assignment of error, and noted many factors weighing against Shurelds. While Shurelds feels that the trial court placed too much emphasis on the fact that it seemed his request was made in bad-faith due to what was stated on the jail-house calls, the calls themselves are damaging as Shurelds specifically states he wants to get his trial pushed back. A trial court could find this a dilatory tactic. *See State v. Baskins*, 3d Dist. Allen No. 1-18-23, 2019-Ohio-2071, ¶ 10. Moreover, although on appeal Shurelds claims that there was no clear "benefit" to him in getting the trial date pushed back, the state had brought a witness in from Utah and the state noted that the witness would potentially be unavailable for a significant period of time.

{¶70} Furthermore, Shurelds did not demonstrate a complete breakdown in communications with his attorney; rather, there appeared to be a disagreement

between how the case should be tried, which is not enough to establish a breakdown in communication. *See State v. Ames*, 3d Dist. Allen No. 1-19-02, 2019-Ohio-2632, ¶ 25. In addition, the timing of the motion was extremely late in the process, particularly given the amount of time the case had been pending. *Baskins*, *supra*, at ¶ 10.

**{¶71}** In sum, the trial court's thorough analysis and measured consideration of Shurelds' motion establish that there was no error here, let alone an abuse of discretion. For all of these reasons, Shurelds' third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶72}** In his fourth assignment of error, Shurelds argues that his no contest pleas were not entered knowingly, intelligently, and voluntarily.

Standard of Review

**{¶73}** "Because a no-contest or guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, ¶ 10, citing *Parke v. Raley*, 506 U.S. 20, 28-29, 113 S.Ct. 517 (1992); *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 25; *see State v. Engle*, 74 Ohio St.3d 525, 527 (1996). "If the plea was not made knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional." *Dangler* at ¶ 10.

{¶74} Criminal Rule 11(C)(2) outlines the procedures for trial courts to follow when accepting pleas in felony cases. It reads as follows.

**(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:**

**(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.**

**(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.**

**(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.**

{¶75} Criminal Rule 11 " 'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.' " *Dangler* at ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975). The Supreme Court of Ohio has recently reaffirmed that "our focus in reviewing pleas has not been on whether the trial judge has '[incanted] the precise verbiage' of the

rule, *State v. Stewart*, 51 Ohio St.2d 86, 92, 364 N.E.2d 1163 (1977), but on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea[.]" *Dangler* at ¶ 12 citing *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶¶ 15-16.

**{¶76}** "When a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial-court proceedings and that he was prejudiced by that error." *Dangler* at ¶ 13 citing *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14-15; Crim.R. 52. Generally, to demonstrate prejudice, a defendant would have to establish that "that his plea would not have otherwise been made." *Dangler* at ¶ 24.

**{¶77}** There are limited exceptions to the prejudice requirement in the criminal-plea context. "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *Dangler* at ¶ 14 citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, at ¶ 31; *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, at syllabus. The "constitutional" rights are set forth in Crim.R. 11(C)(2)(c) above. *See Dangler* at ¶ 14. When a trial court fails to fully cover "nonconstitutional" rights in Crim.R. 11, "a defendant must affirmatively show prejudice to invalidate a plea." *Dangler* at ¶ 14, citing *Clark* at ¶ 17. The Supreme Court of Ohio recognized one other exception

to the prejudice requirement: "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." (Emphasis sic.) *Dangler* at ¶ 15, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, ¶ 22.

**{¶78}** "Aside from these two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Dangler* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). "The test for prejudice is 'whether the plea would have otherwise been made.' " *Dangler* at ¶ 16, quoting *Nero*.

Analysis

**{¶79}** In this case Shurelds does not contend that the trial court's Crim.R. 11 dialogue was deficient in any manner. In fact, the record reflects a thorough dialogue at the plea hearing compliant with Crim.R. 11. However, Shurelds argues that when the trial court denied his requests for continuances and his request for substitution of counsel, Shurelds was put in an "impossible" position.

**{¶80}** Contrary to Shurelds' argument, the Crim.R. 11 dialogue established that Shurelds was aware of all the constitutional and non-constitutional rights he was waving when entering his pleas. He repeatedly expressed that he understood what he was doing, that he was satisfied with his attorney, that he did not need more

time to think about the situation, and that he was not promised anything other than what had been stated in the written plea agreement. He was notified that a jury pool was present and that the parties were ready to proceed to a trial if Shurelds desired to have one.

{¶81} Simply put, there is nothing in the record that establishes that Shurelds' pleas were anything other than knowing, intelligent, and voluntary under the Supreme Court of Ohio's holding in *Dangler*. Shurelds has also not demonstrated any prejudice or that his plea would not have otherwise been made other than through self-serving statements. *See State v. Blair*, 3d Dist. Paulding No. 11-20-01, 2021-Ohio-266, ¶ 18. For these reasons, his fourth assignment of error is overruled.

*Fifth Assignment of Error*

{¶82} In his fifth assignment of error, Shurelds argues that the trial court erred by denying his presentence motion to withdraw his no contest pleas.

Legal Standard

{¶83} A motion to withdraw a no contest plea is governed by Crim.R. 32.1, which reads,

> **A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.**

While "a presentence motion to withdraw a guilty plea should be freely and liberally granted[,] * * * a defendant does not have an absolute right to withdraw a plea prior to sentencing." *State v. Xie*, 62 Ohio St.3d 521, 527 (1992).

{¶84} "A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Xie*, paragraph one of the syllabus.

> **Some of the factors that are weighed in considering the trial court's decision on a presentence motion to withdraw a plea are as follows: (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge. *State v. Griffin* (2001), 141 Ohio App.3d 551, 554, 752 N.E.2d 310 [(7th Dist.)].**

*State v. Lane*, 3d Dist. Allen No. 1-10-10, 2010-Ohio-4819, ¶ 21. "None of the factors is determinative on its own and there may be numerous additional aspects 'weighed' in each case." *State v. North*, 3d Dist. Logan No. 8-14-18, 2015-Ohio-720, ¶ 16.

{¶85} "The decision to grant or deny a motion to withdraw a guilty plea is within the sound discretion of the trial [court] and will not be disturbed on appeal, absent an abuse of discretion." *State v. Peacock*, 3d Dist. Seneca No. 13-13-42,

2014-Ohio-1571, ¶ 26. When the abuse of discretion standard applies, an appellate court is not to substitute its judgment for that of the trial court. *State v. Thompson*, 3d Dist. Henry No. 7-16-10, 2017-Ohio-792, ¶ 11.

Analysis

**{¶86}** On appeal, Shurelds argues that an analysis of the factors listed above actually weighs in favor of granting his motion to withdraw. He contends that his motion to withdraw was timely, that the state would not have been prejudiced, that the record established he was not satisfied with his representation, that he never admitted guilt, and that he felt he had a defense to the charges based on attacking the credibility of the state's witnesses. Further, Shurelds contends that the denial of his requests for continuances denied him the ability to "run down vital witnesses," denied him the counsel of his choice, and that he was facing an impending jury trial with an attorney he did not trust.

**{¶87}** The trial court held a hearing on Shurelds' motion to withdraw his pleas. Shurelds provided brief testimony at the hearing stating that he attempted to terminate his attorney in early June because he did not think his attorney was going to do his best to represent him and his attorney had not subpoenaed the witnesses that Shurelds felt were important. Further, he claimed that he was told that if he went to trial he would get "sixty-four years" but he was told if he did not go to trial he would get "way under that." (Aug. 4, 2020, Tr. at 8).

{¶88} Following the hearing on the motion to withdraw, the trial court took the matter under advisement then issued an eight page written entry denying Shurelds' motion. In the entry, the trial court noted that the motion was timely. The trial court stated there was some prejudice to the state if the motion to withdraw was granted based on the one witness that had been brought in from Utah, and his potential unavailability for up to eighteen months going forward. Nevertheless, the trial court determined that this factor alone did not merit denying Shurelds' motion.

{¶89} The trial court analyzed other factors, including the fact that Shurelds was represented by a competent, state public defender, that Shurelds entered his pleas on the date of trial after meeting repeatedly with his attorney and after being advised he could have a trial and that he could have the trial court subpoena witnesses. The trial court noted that there was no demonstration of a breakdown of communications between Shurelds and the state public defender; rather there was a difference in trial strategies. Further, the trial court emphasized that there was no credible evidence that the attorney induced Shurelds to enter his pleas and that while Shurelds professed innocence in his motion to withdraw, he did not do so at the plea hearing. In fact, the trial court stated that Shurelds expressed no evidence of confusion at the plea hearing. Ultimately, the trial court stated,

> **The determination of the instant motion boils down to defendant's self-serving contention that if the Court would have allowed him to change counsel less than a week before trial and continue the trial, defendant would not have entered the pleas. But the totality**

> **of the evidence, even liberally viewed, does not support this contention, especially where defendant knowingly and voluntarily waived his right to present witnesses and ask the Court to compel witnesses to testify for him (Plea Transcript p. 20).**

(Doc. No. 291).

**{¶90}** In our review of the trial court's determination to deny Shurelds' motion to withdraw his pleas, we find that Shurelds has not established "a reasonable and legitimate basis for withdraw" of his pleas. Importantly, " 'A change of heart or mistaken belief about the plea is not a reasonable basis requiring a trial court to permit the defendant to withdraw the plea.' " *State v. Lane*, 3d Dist. Van Wert No. 15-12-13, 2013-Ohio-1497, ¶ 20, quoting *State v. Hoke,* 4th Dist. No. 10CA32, 2011–Ohio–1221, ¶ 13; *State v. Prince,* 3d Dist. No. 2–12–07, 2012–Ohio–4111, ¶ 22; *see also State v. Brooks,* 10th Dist. No. 02AP–44, 2002–Ohio–5794, ¶ 51 (stating "[a] defendant's change of heart or mistaken belief about the guilty plea or expected sentence does not constitute a legitimate basis that requires the trial court to permit the defendant to withdraw the guilty plea").

**{¶91}** Analyzing the factors listed above, the state did indicate that it would be prejudiced to some degree in this matter, Shurelds expressed no issues with his counsel's representation when entering his no contest pleas, and Shurelds' appointed counsel indicated he was prepared to go to trial. Further, as discussed in the previous assignment of error, the Crim.R. 11 plea hearing was fully compliant with applicable authority, Shurelds was given a hearing on the motion to withdraw,

and the trial court gave full and fair consideration to the motion to withdraw as evidenced through the hearing and through the written entry on the matter. These issues all weigh in favor of the trial court's denial of Shurelds' motion. *Lane*, *supra*, at ¶ 20, citing *State v. Staton*, 3d Dist. No. 4-11-06, 2011-Ohio-4889, ¶ 4.

**{¶92}** Nevertheless, Shurelds motion was timely; however his claim of innocence is entirely specious and contrary to Shurelds' statements at the plea hearing wherein he did not contest the allegations in the indictment. Moreover, the plea hearing made clear that Shurelds was aware of the nature of the charges and potential sentences, and his claim to have a complete defense to the charge is not established.

**{¶93}** When weighing the factors outlined above, we cannot find that the trial court abused its discretion by denying Shurelds' motion to withdraw his pleas. The only factor clearly weighing in Shurelds favor was the timing of the motion. In fact, there were several factors weighing significantly against him, thus based on the record before us we cannot find that the trial court abused its discretion.[7] Therefore Shurelds' fifth assignment of error is overruled.

---

[7] Shurelds made claims that he felt the trial court, the prosecutor, and the lead detective were biased against him due to an incident years prior to the case *sub judice*. We see no indication of bias in the record before us and no indication that Shurelds' pleas were anything other than voluntary. Shurelds had the opportunity to try his case to a jury, which would have made the determination regarding his guilt or innocence, yet he elected not to do so.

*Sixth Assignment of Error*

**{¶94}** In his sixth assignment of error, Shurelds argues that the trial court failed to make the statutory findings necessary to impose consecutive sentences at the sentencing hearing, even though the appropriate findings were made in the judgment entry.

Standard of Review

**{¶95}** Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that " 'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

Relevant Authority

**{¶96}** Pursuant to R.C. 2929.14(C)(4), in order to impose consecutive sentences, a trial court must find on the record that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's

conduct and to the danger the offender poses to the public." *Accord State v. Grate*, --- Ohio St.3d ---, 2020-Ohio-5584, ¶ 205. A trial court must then also find that at least one or more of the aggravating factors in R.C. 2929.14(C)(4)(a) through (c) are present. Those factors include,

> **(a)  The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.**

> **(b)  At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.**

> **(c)  The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.**

**{¶97}** In *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 37, the Supreme Court of Ohio held that a trial court must make the requisite statutory findings before imposing consecutive sentences "at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings."

Analysis

**{¶98}** There is no dispute in this case that the trial court made all the appropriate consecutive sentencing findings in its final judgment entry. However,

-43-

Shurelds argues that the trial court failed to make all of the required consecutive sentences findings at the sentencing hearing, thus this case must be reversed and remanded for resentencing. The state counters by arguing that while the trial court did not use the precise talismanic language of the statute at the sentencing hearing like it did in its final judgment entry, the trial court had engaged in a consecutive sentences analysis on the record that supported the imposition of consecutive sentences in this matter.

{¶99} At the sentencing hearing, the trial court stated the following with regard to consecutive sentences.

> **With respect to whether consecutive or concurrent, in looking at the totality of the circumstances and what all occurred, and how it occurred, and how the victims especially in the Kidnappings were treated, the Court is going to order that Counts Four, Five, and Seven will be ordered to be served consecutive to each other.**

(Aug. 10, 2020, Tr. at 19). The trial court's judgment entry on the matter then emphasized that the trial court was finding that the aggravating factor was R.C. 2929.14(C)(4)(b) regarding multiple offenses and great or unusual harm.

{¶100} It is clear after a review of the trial court's statement regarding consecutive sentences that the trial court did not recite the "talismanic words" of the statute. The "talismanic" words are not required, if preferred, but it must be evident from the trial court's analysis that the specific statutory findings have been made.

**{¶101}** We have previously held that where a trial court fails to clearly make the requisite consecutive sentence findings at either the sentencing hearing or in its judgment entry of sentence, pursuant to *Bonnell*, the case must be reversed and remanded for resentencing so that the appropriate findings can be made. *State v. Kammeyer*, 3d Dist. Seneca No. 13-19-48, 2020-Ohio-3842, ¶ 69. The specific, necessary statutory findings are not evident in the trial court's statement. Importantly, we are not concluding that consecutive sentences are unsupported in this matter; rather, we are merely holding consistent with our own precedent that the appropriate findings must be clearly made in order to impose consecutive sentences. Therefore, Shurelds' sixth assignment of error is sustained.

*Seventh Assignment of Error*

**{¶102}** In his seventh assignment of error, Shurelds argues that the trial court "erroneously believed that it must impose[] a third firearm specification and must do so consecutively."

Analysis[8]

**{¶103}** Revised Code 2929.14(B)(1)(g) discusses the imposition of multiple consecutive prison terms for multiple firearm specifications. It reads as follows.

> **(g)   If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender**

---

[8] As this assignment of error deals with sentencing, the same standard of review applied in the sixth assignment of error is applicable here.

**is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.**

{¶104} Here, Shurelds was convicted of aggravated robbery with a firearm specification and two other felonies, invoking the preceding statute. At the sentencing hearing, the trial court sentenced Shurelds to serve three years on all three of the firearm specifications. The trial court then stated, "the Court also then will *exercise its discretion* under that statute and order that the three firearm specifications that are consecutive to their respective counts are also going to be consecutive." (Aug. 10, 2020, Tr. at 20).

{¶105} Prior to the trial court's invocation of the sentence, which reflects that it exercised discretion in imposing the third consecutive sentence for the firearm specification, defense counsel noted that the trial court had discretion on the matter. The trial court also referenced its discretion on the matter in prior hearings, including at the plea hearing. (June 23, 2020, Tr. at 10).

{¶106} Thus the record reflects that the trial court was aware that it had to run two of the firearm specifications consecutively, and that it had *discretion* to run the third firearm specification consecutively. *State v. James*, 8th Dist. Cuyahoga

No. 102604, 2015-Ohio-4987, ¶ 41. As a result, we fundamentally disagree with Shurelds' premise that the trial court "erroneously believed" that it had to impose a prison term on the third firearm specification as it is contrary to what actually occurred. However, as Shurelds case is being remanded for resentencing, we overrule this assignment of error as moot since it will need to be addressed again at resentencing.

*Conclusion*

{¶107} For the foregoing reasons Shurelds' first, second, third, fourth, fifth, and seventh assignments of error are overruled, and his sixth assignment of error is sustained. The judgment and sentence of the Allen County Common Pleas Court is affirmed in part and reversed in part, and this case is remanded for further proceedings.

*Judgment Affirmed in Part,*
*Reversed in Part, and*
*Cause Remanded*

**ZIMMERMAN and MILLER, J.J., concur.**

**/jlr**